# Exhibit A

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Subpoena to Castellano Malm Ferrario & Buck PLLC, March 24, 2006
("the subpoena")

# United States District Court

FOR THE DISTRICT OF _____ **the District of Columbia** _____

| TO: | SUBPOENA IN A CIVIL CASE |
|---|---|
| Castellano Malm Ferrario & Buck LLC<br>2121 K Street N.W., Suite 800<br>Washington, D.C. 20037 | Synthes (U.S.A.) and Synthes Spine Company, L.P.<br><br>v.<br><br>Globus Medical, Inc., Richard A. Kienzle, and David C. Paul<br>U.S.D.C. for the Eastern District of Pennsylvania<br>2:04-cv-1235 |

___ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

___ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to the matters known or reasonably available to the organization. *See* Federal Rule of Civil Procedure 30(b)(6).

| DESCRIPTION OF THE MATTERS ON WHICH EXAMINATION IS REQUESTED |
|---|

**XX** YOU ARE COMMANDED to produce and permit inspection and copying of the books, documents, or tangible things set forth in the attached Schedule A, in your possession, custody, or control at the place, date and time specified below:

| PLACE | DATE AND TIME |
|---|---|
| Dechert LLP<br>1775 I Street, NW, Washington, DC 20006<br>unless otherwise agreed | April 10, 2006, at 9:00 a.m.<br>unless otherwise agreed |

___ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | | DATE |
|---|---|---|
| _(signature)_ | Robert W. Ashbrook Jr.,<br>Attorney for Plaintiffs | March 24, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Robert W. Ashbrook Jr., Dechert LLP, Cira Centre 21st Floor, 2929 Arch Street, Philadelphia, PA 19104, (215) 994-4000

(See Rule 45, Federal Rules of Civil Procedure, Parts (c) and (d) below)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
         DATE

Signature of Server

_____

Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts (c) and (d):

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, Documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for depositions, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the material or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(b)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce Documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the Documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**SCHEDULE A TO THE SUBPOENA**
**TO CASTELLANO MALM FERRARIO& BUCK**
**DATED MARCH 24, 2006**

**Definitions and Instructions**

The following definitions are applicable to terms used in this Schedule A.

1.     "Globus" means Globus Medical, Inc., as well as its predecessors, successors, subsidiaries, divisions, assigns, parent corporations, and affiliates, and all past or present employees, officers, directors, agents, legal representatives, consultants, or other persons (including attorneys) acting for or on any or all of their behalves.

2.     The term "Globus Patents" means:

    (a)     U.S. Patent Nos. 6,986,771 and 6,989,011 and any reissues thereof;

    (b)     all other United States or foreign patents assigned in whole or in part to Globus;

    (c)     all patents licensed exclusively or non-exclusively to Globus; and/or

    (d)     all patents marked on products currently or formerly sold or manufactured by Globus.

3.     The term "Globus Applications" means any patent application filed by or on behalf of Globus or any Globus employee, including, but not limited to:

    (a)     International Application Nos. PCT/US 05/23984 (filed July 06, 2005), PCT/US 05/11918 (filed April 08, 2005), PCT/US 04/15922 (filed May 21, 2005), and PCT/US 05/13253 (filed April 19, 2005);

    (b)     U.S. Application Nos. 10/885,841 (filed July 08, 2004), 10/819,994 (filed April 08, 2004), 11/146,147 (filed June 07, 2005), 11/294,389 (filed December 06, 2005), 10/443,755 (filed May 23, 2003), 10/762,533 (filed

1

January 23, 2004), 11/244,035 (filed October 6, 2005), 10/826,285 (filed

April 19, 2004), 11/097,340 (filed April 04, 2005), 60/491,271 (filed July

31, 2003), 10/827,642 (filed April 20, 2004), 10/909,210 (filed July 30,

2004), 11/246,149 (filed October 11, 2005), 11/318,438 (filed December

28, 2005), and 10/745,668 (filed December 29, 2003);

(c)     all other United States and foreign applications assigned in whole or in

part to Globus; and

(d)     all applications marked on products currently or formerly sold or

manufactured by Globus.

4.     The term "related patent applications" means any provisional, continuation,

continuation-in-part, divisional, reexamination, or reissue applications, whether issued or

abandoned, whether domestic or foreign, that claim priority from or through any of the Globus

Applications, or from or through which the Globus Applications claim priority.

5.     The term "related patent" means any patent that issues from a related patent

application.

6.     "Document" or "documents" shall mean documents and things as broadly defined

in Rule 34 of the Federal Rules of Civil Procedure, and includes papers of all kinds and non-

paper information storage means, including by way of example and without limitation, originals

and copies, however made, of letters, memoranda, notes, computer generated data, calendars,

records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, legal instruments,

agreements, drawings, sketches, graphs, prints, hand-written notes, rough drafts, secretarial

notes, work pads, diaries, films, tapes, videotapes, CD's, DVD's, pictures, photographs, books,

pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists,

computer files, announcements, electronic mail messages, or any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically.

7.    The term "person" embraces individuals, corporations, and other legal entities, and the acts and knowledge of a "person" as used herein are defined to include acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

8.    The term "referring or relating to" means referring to, relating to, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, refuting, contradicting, or constituting (in whole or part).

9.    "Communications" include, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, mail, personal delivery or otherwise, including, but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

3

## REQUESTS FOR DOCUMENTS

**Document Request No. 1:**

Produce all documents referring or relating to the conception, design, development, or testing of any alleged invention described or claimed in the Globus Patents, Globus Applications, or any related patent or related patent application, including, without limitation:

    (a)    all documents referring or relating to the first written description of such alleged invention;

    (b)    all documents referring or relating to the first drawing pertaining to such alleged invention;

    (c)    all documents referring or relating to the first oral disclosure of such alleged invention; and

    (d)    all documents referring or relating to the first disclosure of such alleged invention to a third party not under any obligation or confidentiality with respect to the alleged invention.

**Document Request No. 2:**

Produce all documents referring or relating to the reduction to practice (actual or constructive) of any alleged invention described or claimed in the Globus Patents, Globus Applications, or any related patent or related patent application, including, without limitation:

    (a)    all documents referring or relating to any effort or activity of the inventors or any others directed toward the reduction to practice of such alleged invention;

4

    (b)    all documents describing the activities of each named inventor of such alleged

invention, between the conception of such alleged invention and the first actual

reduction of such alleged invention to practice;

    (c)    all documents referring or relating to the first actual reduction of such alleged

invention to practice; and

    (d)    all invention disclosure documents.

**Document Request No. 3:**

    Produce all documents referring or relating to any use by Globus or any others of

the subject matter claimed in the Globus Patents, Globus Applications, or any related patent or

related patent application.

**Document Request No. 4:**

    Produce all documents, including, but not limited to, prosecution histories,

referring or relating to the filing, preparation, and/or prosecution of the Globus Patents, Globus

Applications, or any related patent or related patent application. This request includes without

limitation:

    (a)    each document constituting, referring or relating to communications regarding

any aspect of the preparation and prosecution of said applications;

    (b)    each document constituting, referring or relating to communications regarding

said patents, or patent applications, or any cited prior art;

    (c)    each document constituting, referring or relating to communications to and from

any patent office, patent receiving office, or international patent body (such as

WIPO);

    (d)    each document referring or relating to any affidavit, oath or declaration filed,

proposed to be filed or considered for filing by any person involved in the

5

preparation and prosecution of said patents or patent applications in connection with such preparation and prosecution proceedings; and

(e)    each document referring or relating to any experiment, research, investigation, development, analysis, study or evaluation performed by or on behalf of Globus or the alleged inventors, referring or relating to the preparation and prosecution of said patents or patent applications.

**Document Request No. 5:**

Produce all documents referring or relating to any communications regarding the Globus Patents, or the subject matter of the Globus Patents, Globus Applications, or any related patents or related patent applications.

**Document Request No. 6:**

Produce all documents constituting, referring, or relating to the research and development notes and records (including lab notebooks) of one or more of the named inventors of the Globus Patents, or any other individuals who contributed to or worked on the conception, design, or development of any alleged inventions described or claimed in the Globus Patents, Globus Applications, or any related patent or patent application.

6

# Exhibit B

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Objection letter from Castellano Malm Ferrario & Buck PLLC
April 5, 2006

# CASTELLANO MALM
# FERRARIO & BUCK PLLC

2121 K Street N.W., Suite 800
Washington, DC 20037
www.cmfblaw.com

Matias Ferrario
Tel. 202.478.5300
Fax 202.318.1288
mferrario@cmfblaw.com

April 5, 2006

**Via U.S. Mail and Electronic Mail**

Robert W. Ashbrook, Jr.
Dechert LLP
Cira Centre, 21st Floor
2929 Arch Street
Philadelphia, Pennsylvania 19104

> Re:    Subpoena in Synthes (U.S.A.) and Synthes Spine Company, L.P. v.
>         Globus Medical, Inc., Richard A. Kienzle, and David C. Paul,
>         CA No. 2:04-cv-1235

Dear Robert,

Castellano Malm Ferrario & Buck, PLLC ("CMFB") is in receipt of a third party subpoena issued by Synthes (U.S.A.) and Synthes Spine Company, L.P. (collectively, "Synthes") in the above referenced matter. To the extent CMFB may have documents responsive to the requests listed in Schedule A of the subpoena, CMFB objects to producing any such documents at this time. Accordingly, pursuant to Fed. R. Civ. P. 45(c)(2) Synthes is not entitled to the production of any documents requested in the subpoena absent a court order.

Notwithstanding the above, CMFB is open to reaching agreement concerning the requested information. From our perspective, any such compromise would entail limiting the nature and scope of the requests to (a) prevent disclosure of privileged information for which there has been no waiver, (b) protect confidential business information, (c) reduce the burden of complying with the subpoena, and (d) prevent duplicative effort and unnecessary expense.

To avoid repetition, the following forms part of CMFB's objections to each and every request listed in Schedule A:

CMFB objects to each and every request to the extent that they seek documents or things protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or any other applicable statutory or common law privilege. CMFB objects to each and every request to the extent that they seek disclosure of a trade secret or other confidential research, development, or commercial information. CMFB objects to each and every request to the extent that they seek documents or things already available to Synthes from their own files or from public sources. CMFB objects to each and every

request in that the requests encompass electronic documents, the collection of which is unduly burdensome, duplicative, and costly. CMFB objects to each and every request to the extent that there is no limit as to time or technical subject matter. CMFB objects to each and every request to the extent that they seek documents or things beyond CMFB's possession, custody, or control. CMFB also objects to each and every request on the grounds that such requests are overly broad and unduly burdensome and oppressive.

Additionally, CMFB objects to the requests listed in Schedule A on the following grounds:

### Document Request No. 1

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is vague and ambiguous to the extent that it calls for a "first" written description, drawing, oral disclosure, or disclosure. CMFB also objects to this request to the extent that it calls for all documents "referring or relating to the conception, design, development, or testing of any alleged invention described or claimed in Globus Patents, Globus Applications, or any related patent or related patent application..." as overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

### Document Request No. 2

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is vague and ambiguous to the extent that it calls for "all documents referring or relating to the conception, design, development, or testing of any alleged invention described or claimed in the Globus Patents, Globus Applications, or any related patent or related patent application...." CMFB also objects to this request as overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. CMFB also objects to this request on the grounds that the term "first" is vague and ambiguous.

### Document Request No. 3

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is overly burdensome, vague and ambiguous to the extent that it calls for "all documents referring or relating to any use."

### Document Request No. 4

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it calls for "all documents...referring or relating to the preparation and prosecution" of Globus Patents, Globus Applications, or

R. W. Ashbrook
April 5, 2006
3 of 3

related patents or related patent applications. CMFB further objects to this request on the grounds that the terms "proposed" and "considered" are vague and ambiguous and are not subject to reasonable interpretation.

**Document Request No. 5**

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and duplicative to the extent that it calls for "all documents referring to relating to any communications regarding the Globus Patents, or the subject matter of the Globus Patents, Globus Applications, or any related patents or related patent applications."

**Document Request No. 6**

In addition to the general objections recited above, CMFB objects to this request on the grounds that it is vague and ambiguous to the extent that it requires CMFB to make a determination as to the individuals who "worked on the conception, design, or development of any alleged inventions...."

In closing, please contact me as soon as possible to discuss the nature and scope of the information requested. As you are aware, we have a limited amount of time to seek a court order quashing or modifying the subpoena. We therefore request your prompt attention to this matter.

Very Truly Yours,

Matias Ferrario

cc:    Jay Gantz *(via email only)*
       David Demski *(via email only)*
       John McShea *(via email only)*


MXF/kan

# Exhibit C

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Email string regarding terms of the subpoena
between Synthes (Robert Ashbrook) and
Castellano Malm Ferrario & Buck PLLC (Matias Ferrario)
May 12, 2006
May 5, 2006
May 2, 2006
April 20, 2006

12359227.7

## Ashbrook, Robert

| | |
|---|---|
| **From:** | Ashbrook, Robert |
| **Sent:** | Friday, May 12, 2006 7:21 PM |
| **To:** | 'Matias Ferrario' |
| **Subject:** | RE: Synthes v. Globus subpoena |

Matias,

For reasons we have already discussed, and which we will explain in our brief opposing your motion to quash, we cannot accept the requirements that you propose.

If you have any further suggestions for narrowing the subpoena, we remain willing to listen.

--Bert

Robert W. Ashbrook
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104-2808
direct:  +1  215  994  2215
direct fax:  +1  215  655  2215
robert.ashbrook@dechert.com
www.dechert.com


-----Original Message-----
From: Matias Ferrario [mailto:mferrario@cmfblaw.com]
Sent: Friday, May 05, 2006 3:37 PM
To: Ashbrook, Robert
Subject: RE: Synthes v. Globus subpoena

Bert,

The additional proposed limitations do not, in my opinion, narrow the burden of compliance.

We believe reducing the universe of documents by subject matter, temporal scope, and privileged information is more effective in reducing the burden than by applying separate, unrelated exceptions to the whole universe of documents.  Furthermore, we do not think it unfair to request that Synthes provide us with the basis for its trade secret claims and, thus, help narrow the request to information that is relevant or otherwise useful to proving Synthes's claims.  Presumably, Synthes is in the best position to know what the basis of their allegations are, and for that reason, we do not feel our request is unreasonable.

We propose that Synthes limit the requested information along the following parameters:

a)     limit responsive documents to subject matter(s) for which Synthes Spine had a product in active development while David Paul was at Synthes Spine;

b)     limit responsive documents to those created or in existence prior to January 2004; and

c)     exclude all internal and external privileged communications from responsiveness.

With respect to section b), the temporal limitation could be changed, but the idea is to base it logically on some reasonable time frame.  For example, the Subpoena could be limited to a reasonable period of time after which David Paul left Synthes (such as 12 months) or a period of time that corresponds with any confidentiality agreement that David Paul may have signed.

With respect to section c), we do not believe that Mr. Malm's limited representation of Synthes Spine before the U.S. Patent and Trademark Office was material or in any way related to the dispute between Synthes and Globus. Accordingly, we do not see the reason for Mr. Malm's exclusion from your proposed exception.

Please let me know whether our proposal is acceptable. I apologize for the late response and please let me know whether you will need any additional time to consider the matter.

Matias


-----Original Message-----
From: Ashbrook, Robert [mailto:robert.ashbrook@dechert.com]
Sent: Tuesday, May 02, 2006 1:56 PM
To: Matias Ferrario
Subject: RE: Synthes v. Globus subpoena

Matias,

We have read your brief in support of your motion to quash, and we appreciate your articulating your current objections to the subpoena. In an effort to get at least partial cooperation from your firm with the subpoena, perhaps without the need to litigate, we are further willing to:

   (10) forgo any privilege log for any of your firm's or Mr. Mulgrew's firm's privileged internal communications and internal documents (i.e., which have not been revealed to anyone other than the patent attorneys and their firms' employees). This would include privileged drafts of documents not revealed outside the firms.

   (11) forgo any privilege log for attorney-client privileged communications made on or after January 1, 2005, unless those communications were sent from or to either Mr. Mulgrew or Mr. Malm.

Based on your representation to me that your firm only started work for Globus in early 2005, I expect that our proposed narrowing on item (11) in particular will reduce the size of your privilege log. However, we cannot exclude a log for Mr. Mulgrew or Mr. Malm because we have just learned that both of these attorneys formerly represented Synthes with regard to spine technology in the U.S. Patent and Trademark Office.

Kindly advise whether your firm will comply with the subpoena with these additional limitations.

--Bert

Robert W. Ashbrook
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104-2808
direct:  +1  215  994  2215
direct fax:  +1  215  655  2215
robert.ashbrook@dechert.com
www.dechert.com


-----Original Message-----
From: Ashbrook, Robert
Sent: Thursday, April 20, 2006 2:35 PM
To: 'Matias Ferrario'
Subject: Synthes v. Globus subpoena

Matias,

As you know, for the past two weeks we have been discussing your compliance with the subpoena issued by Synthes in the Synthes v. Globus case in Pennsylvania, for which you opened case 06-ms-161 in the District of the District of Columbia. This email is to summarize our progress to date.

As you mentioned today, your objection to complying with the subpoena on confidentiality grounds would be satisfied by a confidentiality agreement between us similar to the one entered into between Globus and Synthes in the underlying case. I offered to draft such an agreement, but we agreed to wait because your other objections may moot the issue.

As we discussed earlier today and have discussed over the past two weeks, you continue to have burdensomeness/relevancy objections to the subpoena, and you said you needed today to consult with Globus about whether you would refuse to comply with the entire subpoena, or whether there are portions of the subpoena which you would comply with voluntarily.

As you know, Globus was ordered by the District Court in Pennsylvania to produce documents regarding all its patents and patent applications, and as a result Globus produced only a trivial amount of unpublished material. Nevertheless, Synthes has tried to accommodate your continued objections by explaining or offering to limit the scope of the subpoena in the following ways:

    (1) all prosecution histories available from the patent office and published patent applications would be excluded;

    (2) all correspondence concerning a patent application created after the filing of that patent application (including but not limited to transmittal letters enclosing patent office correspondence), for which you claimed the attorney/client privilege, would not need to be logged (unless it also concerned other subject matter, for example, disclosures of new matter intended for a separate CIP application);

    (3) all opinions of counsel regarding non-Globus intellectual property (for example, an opinion regarding whether a Globus product infringe another's patent, or whether another's patent was invalid) would be excluded, but opinions regarding Globus's IP (for example, an opinion regarding whether an alleged Globus invention was patentable) would not be excluded;

    (4) all documents created after the date of the subpoena would be excluded;

    (5) all your internal "docket reports" would be excluded;

    (6) all your invoices to Globus, as well as any correspondence solely regarding such invoices, would be excluded;

    (7) any patent literature referred to in a published or produced patent application or listed in an IDS would be excluded, but non-patent literature and patent literature which was not so referred to or listed would not be excluded;

    (8) any prosecution histories which you expect to become publicly available from the patent office within and patent applications which you expect to be published within two months from today would be excluded, provided that you gave us the application numbers (or the numbers from which they claimed priority) so that we could quickly locate them once they became available/published, and provided that you produced them to us two months from today, if they were not available or published as you expected.

    (9) Synthes would pay for your reasonable out-of-pocket copying costs.

Nevertheless, these potential accommodations were not enough to relieve your objections. Instead, your suggestion has been that Synthes give you a list of the trade secrets that it claimed to have been misappropriated by Globus, so that you could compare that list to the material in your possession determine whether its relevance and burdensomeness warranted your production of it. Although you stated that the material in your possession dealt with spine products generally, you stated that such a limitation would be too broad. As I explained, Synthes believes that production of this material, or making legitimate claims of privilege, is not burdensome and that all this material is quite relevant and important to the underlying Synthes v. Globus case.

You also objected that the volume of material requested was excessive. Synthes disagrees. You stated that Globus had been your client for about a year, and that the number of Globus's unpublished patent applications was approximately the same as the number of their published applications (perhaps 15-20), although you would not say what the volume or nature of the responsive material was.

Although we discussed them only briefly, your April 5 letter contains several other objections. You objected to the term "first" in Requests 1 and 2; I told your that your response could be limited to the "first" occurrence of which you had knowledge. You said

objected to Request 2 to the extent "testing" included testing done by the FDA; I agreed that it did not mean testing done by the FDA.  You objected to the terms "proposed" and "considered" in Request 4(d) as unintelligible; Synthes agrees to exclude Request 4(d) from the subpoena, to the extent it goes beyond the other requests.  Finally, you objected to Request 6 to the extent you did not know "who worked on the conception, design, or development of any alleged invention."  I agreed that your response could be limited to the extent of your knowledge, although I am surprised that as Globus's patent attorneys you have not already determined this information.

Attached is the copy of Second Amended Complaint in the Synthes v. Globus case in Pennsylvania, which you asked for this morning.  I am surprised that you have not seen it already, given all the contacts you described having with Globus about this matter.

I look forward to your response today regarding whether you will voluntarily comply with any part of the subpoena, or suggesting other some way that you might possibly limit your response so as to meet your objections.  Although we have not agreed to a further extension of your response date for the subpoena, we remain willing to consider any proposal you may have for another extension beyond today.

--Bert

Robert W. Ashbrook
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104-2808
direct:  +1  215  994  2215
direct fax:  +1  215  655  2215
robert.ashbrook@dechert.com
www.dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

# Exhibit D

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Email regarding terms of the subpoena
between Synthes (Robert Ashbrook) and
Castellano Malm Ferrario & Buck PLLC (Matias Ferrario)
May 10, 2006

**Ashbrook, Robert**

---

**From:**      Ashbrook, Robert
**Sent:**      Wednesday, May 10, 2006 10:57 PM
**To:**        'Matias Ferrario'; 'John P. McShea'
**Subject:**   Synthes subpoenas - Opinion Work

Matias and John,

On April 20, Synthes offered to exclude from the scope of its subpoena to Castellano Malm certain opinions of counsel regarding non-Globus intellectual property. Castellano Malm rejected that offer. On April 24, Synthes extended the same offer to Bingham McCutchen (via McShea Tecce). Neither McShea Tecce nor Bingham McCutchen has responded.

Since then, we have learned that Globus hired two former Synthes patent attorneys, Brian J. Malm and John P. Mulgrew, to prosecute patents for Globus, and perhaps to do patent opinion and/or other work for Globus. Moreover, we have now confirmed that these attorneys did work on the same technology for Globus that they worked on for Synthes, and that both attorneys worked directly with David C. Paul at Synthes.

Accordingly, it is now apparent that Synthes's requests for opinions of counsel prepared for Globus by or with the help of either of these two attorneys, concerning Synthes intellectual property, are calculated to lead to the discovery of admissible evidence in the Synthes v. Globus case in Pennsylvania. Such opinions may not be privileged, and in any case, privilege log entries for them are relevant. Therefore, we must withdraw our offer to exclude from the scope of the subpoenas any opinions of counsel regarding Synthes's intellectual property which these two attorneys prepared or helped prepare. However, we continue to hold open our offer to exclude from the documents we are requesting opinions concerning third party products (for example, clearance opinions regarding Medtronic products) and opinions concerning Synthes intellectual property which neither of these attorneys prepared or helped prepare.

--Bert Ashbrook

Robert W. Ashbrook
Dechert LLP
+1 215 994 2215  direct telephone
+1 215 655 2215  direct facsimile
robert.ashbrook@dechert.com
www.dechert.com

# Exhibit E

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Affidavit of Robert W. Ashbrook Jr.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

Synthes (USA) and
Synthes Spine Company, L.P.

     Plaintiffs

     v.                |        1:06-MS-00161 RMC

Globus Medical Inc.,
Richard A. Kienzle, and
David C. Paul,

     Defendants

---

## DECLARATION OF ROBERT W. ASHBROOK JR.

Robert W. Ashbrook Jr. declares:

    1.    I am of legal age and competent to testify.

    2.    This declaration is made upon my personal knowledge.

    3.    I am an attorney representing the plaintiffs ("Synthes") in Synthes (USA) et al. v. Globus Medical, et al., E.D. Pa. no. 04-cv-1235 (the "E.D. Pa." case).

    4.    I am a patent attorney registered with the United States Patent and Trademark Office ("Patent Office"). I am familiar with patent prosecution before the Patent Office and the manner in which patent prosecution files are typically kept.

    5.    On March 24, 2006, I executed a subpoena (the "subpoena") on behalf of the plaintiffs in the litigation underlying the above-captioned litigation to Castellano Malm Ferrario & Buck PLLC ("Castellano Malm"), which is a patent law firm that represents the defendants in the E.D. Pa. case ("Globus").

    6.    In April and May, 2006, I discussed Castellano Malm's response to the subpoena with Matias Ferrario, Esq. of Castellano Malm on several occasions.

7.     On April 20, 2006, Mr. Ferrario confirmed that his partner at Castellano Malm, Brian Malm, was involved in prosecuting unpublished spine-related patents for Globus.

8.     Also on April 20, 2006, Mr. Ferrario stated that a confidentiality agreement in the form of the one used in the E.D. Pa. case would satisfy any concerns that Castellano Malm and Globus had regarding the confidentiality of Globus's unpublished patent applications.

9.     During our April 20, 2006, conversation, I told Mr. Ferrario that I was aware that Globus had 15 to 20 patent applications that had been published. When I asked whether the number of Globus's unpublished patent application was the same, Mr. Ferrario told me that those figures were "about right."

10.    I confirmed the 15 to 20 quantity for the number of unpublished Globus patent applications in an email to Mr. Ferrario that same day. That email is at Exhibit C to Synthes's Memorandum of Law Opposing Castellano Malm's Motion to Quash and Supporting Synthes's Cross-Motion to Compel. Mr. Ferrario replied to that email several times, but never challenged the 15 to 20 quantity.

11.    Also on April 20, 2006, Mr. Ferrario confirmed that Castellano Malm maintains "file wrappers" for Globus's unpublished patent applications.

12.    The term "file wrapper" is well known to and frequently used in patent prosecution. File wrappers are traditionally used by both the Patent Office and patent attorneys to hold records concerning a single patent application. A file wrapper has a separate section for correspondence from the applicant to the Patent Office (including the patent application), and a separate section for correspondence from the Patent Office to the applicant.

13.    On April 14, 2006, Mr. Ferrario indicated that Globus's unpublished patent application files would occupy approximately two bankers boxes.  Two bankers boxes of material is consistent with there being file wrappers for 15 to 20 unpublished Globus patent applications.

14.    Because file wrappers segregate unprivileged correspondence with the Patent Office (including the application itself), the identification and copying of this material for any given patent application is a trivial, ministerial task.

15.    I declare under penalty of perjury under the laws of the Untied States of American that the foregoing is true and correct

Executed on: MAY 15, 2006

Robert W. Ashbrook Jr.

# Exhibit F

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Employee Innovation and Non-Disclosure Agreement
between David C. Paul and Synthes
November 25, 1996



**⊕ SYNTHES°**

SYNTHES U.S.A.

**EMPLOYEE INNOVATION AND NON-DISCLOSURE AGREEMENT**

TO SYNTHES U.S.A.:

    In consideration of my continued employment by SYNTHES and of the salary or wages paid to me and intending to be legally bound hereby, I agree:

    (a) to disclose and assign to SYNTHES as its exclusive property, all inventions and technical or business innovations, including computer software developed or conceived by me solely or jointly with others on company time or on my own time during the period of my employment, (1) that are along the lines of the businesses, work or investigations of SYNTHES or its affiliates to which my employment relates, or as to which I may receive information due to my employment, or (2) that result from or are suggested by any work which I may do for SYNTHES or (3) that are otherwise made through the use of SYNTHES time, facilities or materials;

    (b) to execute all necessary papers and otherwise provide proper assistance (at SYNTHES' expense), during and subsequent to my employment, to enable SYNTHES to obtain for itself or its nominees, patents, copyrights, or other legal protection for such inventions or innovations in any and all countries;

    (c) to make and maintain for SYNTHES adequate and current written records of all such inventions or innovations as set forth in SYNTHES operating guidelines (PD020 Patent Applications);

    (d) upon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential* nature relating to the business of the Company or its affiliates;

    (e) not to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence; and

    (f) not to disclose or utilize in my work with SYNTHES any secret or confidential information of others (including any prior employers), or any inventions or innovations of my own which are not included within the scope of this agreement.

    This agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of SYNTHES. Discharge of my undertakings in this agreement shall be an obligation of my executors, administrators, or other legal representatives or assigns. SYNTHES, wherever used in this agreement, includes SYNTHES U.S.A. , SYNTHES MAXILLOFACIAL, SYNTHES SPINE AND SYNTHES NORTH AMERICA.

    I represent that, except as stated below, I have no agreements with or obligations to others in conflict with the foregoing.

| _(Signature)_ | DAVID C. PAUL <br> _(Print Name)_ | 11/25/96 <br> _(Date)_ |
|---|---|---|

*These terms are used in the ordinary sense, without limitation. Examples of materials, information and data which may be of a secret or confidential nature are: writings, drawings, manuals, notebooks, reports, audio/video work, prototypes, models, inventions, formulas, processes, machines, compositions, computer software, microfiche, accounting methods, business plans and information systems including such materials, information and data which are in machine readable form or otherwise and any information gained through discussions and/or meetings.

# Exhibit G

to Synthes's Memorandum of Law
Opposing Castellano Malm's Motion to Quash
and Supporting Synthes's Cross-Motion to Compel

Second Amended Complaint
in the E.D. Pa. case, no. 04-cv-1235

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SYNTHES (U.S.A.)<br>1690 Russell Road<br>Paoli, PA 19301 | : | |
| and | : | Civil Action No. 04CV1235 |
| SYNTHES SPINE COMPANY, L.P.<br>1690 Russell Road<br>Paoli, PA 19301 | : | JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| v. | : | |
| GLOBUS MEDICAL, INC.<br>303 Schell Lane<br>Phoenixville, PA 19460 | : | |
| and | : | |
| DAVID C. PAUL<br>405 Greene Lane<br>Phoenixville, PA 19460 | : | |
| and | : | |
| RICHARD A. KIENZLE<br>1241 Wisteria Drive<br>Malvern, PA 19355 | : | |
| Defendants. | : | |

## SECOND AMENDED COMPLAINT

Plaintiffs, Synthes (U.S.A.) and Synthes Spine Company, L.P. (collectively, "Synthes"),

by their undersigned counsel, file this Amended Complaint against Defendants Globus Medical

Inc., David C. Paul and Richard A. Kienzle, and in support thereof aver as follows:

## PARTIES

1.     Plaintiff Synthes (U.S.A.) is a Pennsylvania partnership between Synthes, Inc. and Synthes North America, Inc., both of which are corporations organized under the laws of the State of Delaware. Synthes (U.S.A.) is authorized to conduct business in the Commonwealth of Pennsylvania and maintains its principal place of business at 1690 Russell Road, P.O. Box 1766, Paoli, Pennsylvania, 19301.

2.     Plaintiff Synthes Spine Company, L.P. ("Synthes Spine") is a Delaware limited partnership among Synthes (U.S.A.) and Synthes Spine, Inc. and Synthes Management, Inc. (collectively "Synthes"), all of which are business entities authorized to conduct business within the Commonwealth of Pennsylvania. Synthes Spine maintains its principal place of business at 1690 Russell Road, P.O. Box 1766, Paoli, Pennsylvania, 19301.

3.     Defendant Globus Medical, Inc. ("Globus") is a corporation organized under the laws of the State of Delaware and, upon information and belief, is authorized to conduct business within the Commonwealth of Pennsylvania. Globus maintains its principal place of business at 303 Schell Road, Phoenixville, Pennsylvania, 19460.

4.     Defendant David C. Paul ("Paul"), a former Synthes employee, is, upon information and belief, a citizen of India. Paul maintains an address at 405 Greene Lane, Phoenixville, Pennsylvania, 19460.

5.     Defendant Richard A. Kienzle ("Kienzle"), a former Synthes employee, is, upon information and belief, a citizen of the Commonwealth of Pennsylvania. Kienzle maintains an address at 1241 Wisteria Drive, Malvern, Pennsylvania, 19355.

2

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because the Amended Complaint raises at least one claim arising under the laws of the United States.  In addition, this Court may exercise jurisdiction over the remaining state law claims because they are so related to the federal question claim that they form part of the same case and controversy under Article III of the United States Constitution.

7.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Synthes' claims occurred in this judicial district.

## FACTS

### A.     BACKGROUND

8.     As more fully set forth below, this case involves (1) Globus' illegal "passing off" of Synthes' products as its own; (2) Globus, Paul and Kienzle's misappropriation of Synthes' confidential and proprietary trade secret information in violation of the Pennsylvania common law; (3) Paul and Kienzle's use of confidential and proprietary information in violation of specific non-disclosure agreements each signed with Synthes; (4) Kienzle's violation of his non-compete agreement with Synthes; (5) Globus' tortious interference with contracts between Synthes and its employees; (6) Globus' unfair competitive activities in violation of Pennsylvania common law; (7) Paul and Kienzle's breach of their fiduciary duties to Synthes; and (8) Globus, Kienzle, and Paul's aiding and abetting of Synthes employees' breaches of fiduciary duty.

9.     Synthes is a worldwide leader in the medical device industry.  Synthes (U.S.A.) manufactures, produces, and markets medical implants and instrumentation, such as plates, screws, rods, and other devices for orthopedic surgery for internal fixation of broken bones and

3

for facial surgery.  Synthes Spine markets and sells plates, screws, rods and other devices for spinal surgery.

10.    Synthes is in a highly competitive business in which the protection of its confidential, proprietary and trade secret information is vital in order to prevent competitors or would be competitors from obtaining an unfair competitive advantage.

11.    Synthes invests millions of dollars annually in resources to develop its technology, systems and products.  In order to protect its investment, Synthes requires all employees to sign an Employee Innovation and Non-Disclosure Agreement which protects against the use or disclosure of confidential, proprietary, and trade secret information, defined to cover, among other things, product technology, product development information, project information, and manufacturing methods and technology.

12.    Employees hired after 1997 in, among others, capacities which involve sales and marketing and product development, were also asked to sign Confidentiality and Non-Competition Agreements protecting against disclosure of confidential information and prohibiting post-employment activities with or on behalf of a direct competitor, subject to reasonable geographic and temporal limitations.

**B.    DAVID PAUL'S EMPLOYMENT WITH SYNTHES AND SUBSEQUENT CREATION OF GLOBUS.**

13.    Beginning in November 1996, Synthes employed David Paul in a number of positions, including Mechanical Test Engineer, Product Development Engineer, and Group Manager.

4

14. As a condition of Paul's employment with Synthes, on November 25, 1996, he executed an Innovation and Non-Disclosure Agreement. A true and correct copy of Paul's Innovation and Non-Disclosure Agreement is attached hereto as Exhibit "A".

15. Section (d) of the Innovation and Non-Disclosure Agreement obligated Paul to the following:

> [U]pon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential nature relating to the business of the Company or its affiliates.

16. Further, Section (e) of the Innovation and Non-Disclosure Agreement obligated Paul to the following:

> [N]ot to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence...

17. Effective April 3, 2000, Synthes promoted Paul from Group Manager to Synthes' Director of Spine Product Development, a position that he remained in for almost three years.

18. During the course of his employment with Synthes, Paul was intimately involved in the development of Synthes' products, systems and technology and privy to highly sensitive strategic information about the company and its product development on a worldwide basis.

19. On January 2, 2003, Paul resigned from Synthes to create Globus, which is now one of Synthes' direct competitors in the medical device industry. A true and correct copy of Paul's resignation letter is attached hereto as Exhibit "B".

5

20.      Paul is currently Globus' Chief Executive Officer.  Upon information and belief,

he is a shareholder of the company along with Rick Kienzle, Rick Kienzle's brother and other

individuals.

21.      Although Paul is no longer employed by Synthes, his obligations to Synthes under

the Innovation and Non-Disclosure Agreement remain valid and binding.

22.      Since starting Globus, Paul has targeted Synthes employees, including but not

limited to Kienzle, some of whom have binding non-competition and non-solicitation agreements

with Synthes, and has improperly used information and technology he obtained while employed

by Synthes for the advancement of Globus.

**C.      KIENZLE'S EMPLOYMENT WITH SYNTHES**

23.      In 1998, Kienzle began working as Synthes' Mid-Atlantic Regional Manager.  A

true and correct copy of Synthes' letter confirming its verbal offer to Kienzle and indicating

Kienzle's written acknowledgement of acceptance is attached hereto as Exhibit "C".

24.      Among other things, as Mid-Atlantic Regional Manager, Kienzle was responsible

for directing Synthes' sales in the following states: Ohio, Pennsylvania, West Virginia,

Washington, D.C., Maryland, Delaware, and portions of New Jersey.

25.      As Synthes' Mid-Atlantic Regional Manager, Kienzle became familiar with

Synthes' confidential and proprietary business information and customers.

26.      On October 20, 1998, in conjunction with the commencement of his employment

and in exchange for training and access to Synthes' confidential and proprietary business

information, Kienzle executed a Confidentiality and Non-Compete Agreement.  A true and

correct copy of Kienzle's Confidentiality and Non-Compete Agreement is attached hereto as

Exhibit "D".

6

27.    Under this Agreement, Kienzle promised, among other things, to return Synthes' property immediately upon separation from employment, not to disclose Synthes' confidential and proprietary information at any time after leaving Synthes' employ, and not to solicit the customers he serviced for Synthes for a period of one year after leaving Synthes' employ.

28.    The confidentiality provisions of this agreement specifically provide that Kienzle shall not disclose: (1) the identity of customers and prospects, their specific requirements, and the names, addresses and telephone numbers of individual contacts; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6 ) forecasts, budgets and other non-public financial information; product performance information, product technical information and product know-how; and (7) expansion plans, management policies and other business strategies and policies.

29.    The non-competition covenant in Kienzle's Confidentiality and Non-Compete Agreement provides, in relevant part:

> I agree I will not, for a period of one year after my employment
> terminates for any reason, work for (as an employee, consultant,
> contractor, agent or representative) any competitor of Synthes in
> the territory or territories that I am now, or have been responsible
> for at any time during the last year of my employment with
> Synthes.

30.    In addition, the Confidentiality and Non-Compete Agreement prohibits Kienzle from soliciting business from the following categories of Synthes customers and prospective customers:  (1) any customer of Synthes at any time during the last three years of his employment; (2) any prospect that received or requested a proposal or offer from Synthes at any

7

time during the last three years of his employment; (3) any affiliate of any such customer or prospect; or (4) any of the individual customer or prospect contacts he established during his employment with Synthes.

31.     The restrictions in the Confidentiality and Non-Compete Agreement are reasonable in scope and time, as they limit Kienzle from competing in his former Synthes sales territory for a period of only one year.  In addition, the restrictions do not impose a greater restraint than necessary to protect Synthes' legitimate business interests.

32.     As a further condition of his employment, Kienzle also signed an Innovation and Non-Disclosure Agreement, which is identical to that signed by Paul.  The Innovation and Non-Disclosure Agreement prohibits Kienzle from, among other things, using, publishing or otherwise disclosing any of Synthes' secret or confidential information or data either during or subsequent to his employment with Synthes.  A true and correct copy of Kienzle's executed Innovation and Non-Disclosure Agreement is attached hereto as Exhibit "E".

33.     On March 26, 2003, Synthes promoted Kienzle to Vice President of Sales, Northeast Area and made his promotion effective January 1, 2003.  As an Area Vice-President Kienzle was responsible for senior level management of Synthes Spine's sales force on a national basis with particular responsibilities within the geographic area covering Vermont, Massachusetts, New Hampshire, Rhode Island, Connecticut, New York, Pennsylvania, Ohio, New Jersey, Delaware, Maryland, Virginia, West Virginia, Michigan, Mississippi, Illinois, Indiana, Iowa and Wisconsin.  In the course of his responsibilities, Kienzle was privy to secret and confidential information about the company's sales and product strategies and personnel information.

8

34.     As a condition of his promotion, Kienzle agreed to the terms of a Confidentiality, Non-Solicitation And Non-Compete Agreement.  These terms included an agreement not to disclose confidential information, an agreement for one (1) year after his employment not to solicit customers or employees and an agreement not to be employed by a competitor.  A true and correct copy of those terms is attached hereto as Exhibit 'F'.  Despite agreeing to these terms and accepting the substantially increased compensation and perquisites of his new position, Kienzle did not sign the Agreement.  Upon information and belief, he did not do so because he had begun clandestinely to be engaged in business with David Paul despite his acknowledgment to others that he was bound by the new Agreement.

35.     On October 1, 2003, Kienzle resigned his position with Synthes and immediately commenced employment with Globus.

36.     Upon information and belief, Kienzle had for some time prior to his resignation assisted Paul in the development of Globus by improperly using resources and information obtained during the course of his employment with Synthes.

37.     By working for Globus, Kienzle is in violation of his obligations under both his agreements with Synthes.

## D.     GLOBUS' MISAPPROPRIATION AND USE OF SYNTHES' PRODUCT INFORMATION, SOLICITATION OF SYNTHES' CUSTOMERS AND PASSING OFF OF SYNTHES' PRODUCTS

38.     Upon information and belief, Globus, at the direction of Paul and Kienzle, is in the process of developing a national distribution network for its products in an extremely short period of time by using information and products exclusive to Synthes.

39.     Upon information and belief, Globus intends to focus the distribution network for its products in the northeastern United States, which, as previously noted in Paragraph 33,

9

includes many of the same states that Kienzle was responsible for during his employment with Synthes.

40. Globus has also used Synthes' confidential and proprietary business information to place into the marketplace numerous products that are extremely similar to or otherwise identical to certain Synthes instruments and products, which information was obtained and misappropriated directly from Synthes.

41. By way of example, among the similar or identical products that Globus has placed into the marketplace, includes interbody spacers and instrumentation. In addition, upon information and belief, Globus intends to develop a flexible rod stablization system that is similar or identical to that developed by Synthes. Furthermore, Globus has used language in at least one patent application that is identical to that previously used by Synthes in its own applications. These systems were under development by Synthes while Paul was Director of Product Development.

42. Globus has passed off Synthes' products as its own, including, upon information and belief, scratching off Synthes' trademark and other identifying characteristics from Synthes' equipment prior to representing the products as its own to prospective customers.

43. Based upon Paul and Kienzle's former positions with Synthes, their access to Synthes' confidential and proprietary information, the striking similarities and identical features of numerous Globus products when compared to Synthes products, and other conduct as referenced above, Synthes believes that Kienzle, Paul and Globus have used and are continuing to use information misappropriated from Synthes to unlawfully and wrongfully compete with Synthes.

10

44. Upon information and belief, Kienzle and Paul and/or others on their behalf obtained this confidential and proprietary business information, at least in part, by using Synthes' computers.

45. Globus, Kienzle, Paul, and their agents, have been and continue to, directly and indirectly, involve themselves and participate in encouraging breaches by current Synthes' employees of their contractual, common law, and fiduciary duties to Synthes.

## COUNT I – FALSE AND MISLEADING ADVERTISING (LANHAM ACT)
### (Synthes v. Globus)

46. The allegations of Paragraphs 1 through 45 are hereby incorporated.

47. Globus' actions, as set forth above, constitute unlawful "passing off" of Synthes' products as its own, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Upon information and belief, Globus has made false descriptions or representations in connection with its sale of certain products by wrongfully "passing off" Synthes' products as its own.

49. Globus has "passed off" Synthes' products as its own, in part, by, upon information and belief, scratching off trademarks and other identifying characteristics from Synthes' products and by marketing products that are substantially identical to those created and sold by Synthes.

50. Upon information and belief, the products that Globus has "passed off" as its own have entered into interstate commerce.

51. Synthes believes that there is a likelihood of confusion on the part of consumers as a result of Globus' false representations as to the origin and description of its products.

52. By Globus' "passing off," Synthes is being deprived of the value of its name and the goodwill that would come from one knowing the true source of Globus' products.

11

53.     Synthes is being damaged as a result of Globus' misrepresentation of Synthes' products as its own.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

   a)  For actual damages, including both Synthes' actual loss caused by Globus' "passing off" and the unjust enrichment caused by the "passing off";

   b)  For treble damages to punish Globus for its willful and malicious "passing off" of Synthes' products;

   c)  For Synthes' attorneys' fees and costs;

   d)  For an injunction enjoining Globus from the continued "passing off" of Synthes' products; and

   e)  For all other such relief as the Court deems appropriate.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS
### (Synthes v. Globus, Kienzle and Paul)

54.     The allegations of Paragraphs 1 through 53 are hereby incorporated.

55.     The Defendants' actions constitute unlawful misappropriation of trade secrets in violation of the Pennsylvania common law.

56.     The information taken and used by Globus, Paul and Kienzle, which includes, but is not limited to, product designs, product technology, manufacturing systems, product development strategies, sales strategies, business strategies, methodologies, technical capabilities, and formulas developed by or on behalf of Synthes, constitutes "trade secrets" within the meaning of the Pennsylvania common law.

57.     Globus' possession of such information gives it an unfair and wrongful advantage.

12

58.     As employees of Synthes who both signed Innovation and Non-Disclosure

Agreements and, in the case of Kienzle, a Confidentiality and Non-Compete Agreement, Kienzle

and Paul had a duty to maintain the secrecy of, and to limit the use of, trade secret information

they learned about at Synthes and had access to during their employment with Synthes.

59.     Upon information and belief, Paul and Kienzle misappropriated certain

confidential and proprietary business information from Synthes and disclosed this information to

Globus.

60.     Globus, Kienzle and Paul have used Synthes' confidential and proprietary

business information in violation of Kienzle and Paul's duties under their respective Innovation

and Non-Disclosure Agreements to further the purposes of Globus, Kienzle, and Paul.

61.     Among other things, Globus, Kienzle and Paul have used, and are continuing to

use, Synthes' trade secret information to develop products that are substantially similar to or

identical to products marketed by Synthes, and to solicit Synthes' current and former customers,

to solicit current and former employees, some of whom are subject to employment agreements,

Confidentiality and Non-Compete Agreements, and Innovation and Non-Disclosure Agreements

and have confidential and proprietary information.

62.     Globus, Paul and Kienzle knew or had reason to know that they acquired Synthes'

trade secret information through improper means, and knew or had reason to know that Kienzle

and Paul owed a duty to Synthes to maintain the secrecy and limit the use of Synthes'

confidential and proprietary information.

63.     On information and belief, Globus, Paul and Kienzle have willfully misused

Synthes' trade secret information in conducting the business of Globus.

13

64. Synthes has suffered, and will continue to suffer, damages as a result of Globus, Kienzle, and Paul's misappropriation of Synthes' trade secret information.

WHEREFORE, Synthes demands judgment in its favor and against Kienzle, Paul and Globus, jointly and severally:

      a) For actual damages, including both Synthes' actual loss caused by Kienzle, Paul and Globus' misappropriation and the unjust enrichment caused by the misappropriation;

      b) For exemplary damages to punish Kienzle, Paul and Globus for their willful and malicious misappropriation of Synthes' trade secrets;

      c) For Synthes' attorneys' fees and costs;

      d) For an injunction enjoining Kienzle, Paul and Globus' use and continued possession of Synthes' confidential and proprietary trade secret information and requiring Kienzle, Paul and Globus to destroy all copies and duplicates thereof; and

      e) For all other such relief as the Court deems appropriate.

## COUNT III – CIVIL CONSPIRACY
### (Synthes v. Globus, Kienzle and Paul)

65. The allegations of Paragraphs 1 through 64 are hereby incorporated.

66. Globus, Paul and Kienzle have conspired with each other and other persons, including various of Globus' distributors, sales agents and others, the purpose of which is to compete unfairly and illegally with Synthes and to deprive Synthes of the benefit of its property by, among other things:

      a) Passing off Synthes' products as Globus' in violation of the Lanham Act;

      b) Misappropriating trade secrets;

14

c)      Breaching contractual duties;

d)      Tortiously interfering with contracts and prospective contractual relations;

e)      Engaging in unfair competition in violation of Pennsylvania law;

f)      Breaching fiduciary duties; and

g)      Aiding and abetting others to breach fiduciary duties.

67.     Globus, Paul, Kienzle and the other conspirators intended to injure Synthes by conspiring to engage in these wrongful acts.

68.     All of these actions have been taken in furtherance of the conspiratorial agreement.

69.     In the course of their conspiracy, Globus, Paul, Kienzle and the other conspirators have acted willfully and maliciously to injure Synthes by obtaining its confidential and proprietary business information and improperly using this information for Globus' benefit.

70.     Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus, Paul and Kienzle's tortious conduct.

71.     Globus, Paul and Kienzle's actions are a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Globus, Paul and Kienzle:

a)      For actual damages that Synthes is entitled to recover as a result of Globus, Paul and Kienzle's civil conspiracy;

b)      For incidental and consequential damages as permitted by law;

c)      For punitive damages to punish Globus, Paul, and Kienzle for their willful and malicious conduct;

15

d)      For an injunction preventing Globus, Paul and Kienzle from taking any further action pursuant to their civil conspiracy; and

e)      For all such other relief as this Court deems appropriate.

### COUNT IV – BREACH OF CONTRACT
### (Synthes v. Paul)

72.    The allegations of Paragraphs 1 through 71 are hereby incorporated.

73.    The Innovation and Non-Disclosure Agreement between Paul and Synthes is a valid and enforceable agreement that is governed by Pennsylvania law.

74.    As previously stated, the Innovation and Non-Disclosure Agreement expressly prohibits Paul from using or otherwise disclosing Synthes' confidential information without Synthes' permission either during or after terminating his employment with Synthes.

75.    Paul breached his duties under the Innovation and Non-Disclosure Agreement by using or otherwise disclosing Synthes' confidential information to Globus after terminating his employment with Synthes.

76.    Synthes has sustained, and will continue to sustain, damages as a result of Paul's breach of the Innovation and Non-Disclosure Agreement.

77.    Unless otherwise restrained as requested herein, Paul will continue, among other things, to take advantage of his access to Synthes' confidential and proprietary business information, all in violation of Paul's obligations under his Innovation and Non-Disclosure Agreement.

78.    Synthes' damages are a direct and proximate cause of Paul's breach of the Innovation and Non-Disclosure Agreement.

WHEREFORE, Synthes demands judgment in its favor and against Paul:

16

a)     For actual damages that Synthes is entitled to recover as a result of Paul's breach of his Innovation and Non-Disclosure Agreement with Synthes;

b)     For incidental and consequential damages as permitted by law;

c)     For an injunction compelling Paul to comply with the terms of the Innovation and Non-Disclosure Agreement;

d)     For all such other relief as this Court deems appropriate.

## COUNT V – BREACH OF CONTRACT
### (Synthes v. Kienzle)

79.     The allegations of Paragraphs 1 through 78 are hereby incorporated.

80.     The Confidentiality and Non-Compete Agreement and Innovation and Non-Disclosure Agreement between Kienzle and Synthes are valid and enforceable agreements that are governed by Pennsylvania law.

81.     As previously stated, Kienzle is by contract expressly prohibited from competing with Synthes for a period of one year after terminating his employment with Synthes.

82.     Kienzle breached his contractual duties by working for Globus, which is a direct competitor of Synthes, within one year after terminating his employment with Synthes.

83.     As previously stated, Kienzle is by contract expressly prohibited from using or otherwise disclosing Synthes' confidential information without Synthes' permission either during or after terminating his employment with Synthes.

84.     Kienzle breached his contractual duties by using or otherwise disclosing Synthes' confidential information to Globus after terminating his employment with Synthes.

85.     Synthes has sustained, and will continue to sustain, damages as a result of Kienzle's breach of the contract.

17

86. Unless otherwise restrained as requested herein, Kienzle will continue, among other things, to compete with his former employer and take advantage of the access that Synthes gave him to its valuable business relationships and confidential and proprietary business information, all in violation of Kienzle's contractual obligations.

87. Synthes' damages are a direct and proximate cause of Kienzle's breach of contract.

WHEREFORE, Synthes demands judgment in its favor and against Kienzle:

a) For actual damages that Synthes is entitled to recover as a result of Kienzle's breach of his Confidentiality and Non-Compete Agreement and Innovation and Non-Disclosure Agreement with Synthes;

b) For incidental and consequential damages as permitted by law;

c) For an injunction compelling Kienzle to comply with the terms of the Confidentiality Agreement and Innovation Agreement;

d) For Synthes' attorneys fees and costs incurred in enforcing the terms of the Confidentiality and Non-Compete Agreement, as permitted by the Confidentiality and Non-Compete Agreement; and

e) For all such other relief as this Court deems appropriate.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT
### (Synthes v. Globus)

88. The allegations of Paragraphs 1 through 87 are hereby incorporated.

89. As set forth above, Synthes has an existing contractual relationship with Kienzle and other employees or former employees of Synthes.

90. Globus knew or should have known about Synthes' contractual relationship with these individuals.

18

91.     Globus has tortiously interfered with Synthes' contractual relationship with these

individuals by improperly and purposefully causing or inducing them to compete with Synthes

and disclose confidential information in violation of their contractual commitments.

92.     Globus was acting without privilege or justification in interfering with Synthes'

contractual relationships with these individuals.

93.     Globus' interference with Synthes' contractual relationships is willful and wanton

and has been carried out with a specific intent to injure Synthes in the conduct of its business.

94.     Synthes has suffered, and will continue to suffer, substantial and irreparable

damage as a result of Globus' tortious conduct.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

        a)     For actual damages that Synthes is entitled to recover as a result of

               Globus' tortious interference with Kienzle and other employees'

               Confidentiality and Non-Compete Agreements with Synthes;

        b)     For incidental and consequential damages as permitted by law;

        c)     For punitive damages to punish Globus for its willful and malicious

               conduct in tortiously interfering with Kienzle and other employees'

               Confidentiality and Non-Compete Agreements with Synthes;

        d)     For an injunction preventing Globus from further interfering with Synthes'

               contractual relationship with Kienzle and other Synthes employees; and

        e)     For all such other relief as this Court deems appropriate.

### COUNT VII – COMMON LAW UNFAIR COMPETITION
### (Synthes v. Globus)

95.     The allegations of Paragraphs 1 through 94 are hereby incorporated.

96.     Globus has made a systematic effort to induce Synthes employees, including product designers and sales consultants, to leave the employ of Synthes.

97.     Globus' purpose in inducing Synthes' employees to leave the employ of Synthes is to destroy integral parts of Synthes by weakening its design and sales forces and to obtain Synthes' confidential and proprietary trade secret information.

98.     Globus' actions have been willful and wanton and have been carried out with a specific intent to injure Synthes in the conduct of its business and to gain an unfair competitive advantage over Synthes.

99.     Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus' tortious conduct.

100.    Globus' tortious conduct is a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Globus:

a)      For actual damages that Synthes is entitled to recover as a result of Globus' unfair competition with Synthes;

b)      For incidental and consequential damages as permitted by law;

c)      For punitive damages to punish Globus for unfairly competing with Synthes;

d)      For an injunction preventing Globus from any further unfair competition with Synthes; and

e)      For all such other relief as this Court deems appropriate.

## COUNT VIII – BREACH OF FIDUCIARY DUTY
### (Synthes v. Paul and Kienzle)

101.    The allegations of Paragraphs 1 through 100 are hereby incorporated.

102.    Paul and Kienzle held positions of trust and confidence as employees of Synthes.

20

103. In equity and good conscience, Paul and Kienzle were bound to act in good faith and with due regard to the interests of Synthes while they were employees.

104. Synthes was dependent upon Paul and Kienzle to act only in Synthes' best interests until the end of their employment with Synthes.

105. Paul and Kienzle breached their fiduciary duties to Synthes by misappropriating confidential and proprietary information so that Globus, Paul and Kienzle could benefit from the use of such information, all in violation of the Pennsylvania common law.

106. Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Paul and Kienzle's tortious conduct.

107. Paul and Kienzle's tortious conduct is a direct and proximate cause of Synthes' damages.

WHEREFORE, Synthes demands judgment in its favor and against Paul and Kienzle:

    a) For actual damages that Synthes is entitled to recover as a result of Paul and Kienzle's breaches of fiduciary duties;

    b) For incidental and consequential damages as permitted by law; and

    c) For all such other relief as this Court deems appropriate.

## COUNT IX – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Synthes v. Globus, Paul and Kienzle)

108. The allegations of Paragraphs 1 through 107 are hereby incorporated.

109. Globus, Paul and Kienzle and their agents, individually and/or collectively, directly and indirectly, have engaged in a strategy of systematically pursuing and hiring various Synthes' employees with whom Synthes has non-disclosure and non-competition agreements.

21

110.     In the course of this strategy, Globus, Paul, and Kienzle and their agents, have encouraged then-current Synthes employees to breach their fiduciary duties to Synthes.

111.     Globus, Paul, and Kienzle have rendered substantial assistance and encouragement to Synthes' employees to breach their fiduciary duties by, among other things, misappropriating confidential and proprietary information, disclosing confidential and proprietary information, and diverting business and business opportunities from Synthes.

112.     Synthes has suffered, and will continue to suffer in the future, irreparable harm as a result of Globus, Paul and Kienzle's aiding and abetting former Synthes' employees to breach their fiduciary duties to Synthes.

113.     Globus' actions are the direct and proximate cause of Synthes' damages.

22

WHEREFORE, Synthes demands judgment in its favor and against Globus:

a)     For actual damages that Synthes is entitled to recover as a result of Globus' aiding and abetting breach of fiduciary duty;

b)     For incidental and consequential damages as permitted by law;

c)     For an injunction preventing Globus from any further aiding and abetting former Synthes' employees to breach their fiduciary duties; and

d)     For all such other relief as this Court deems appropriate.

Respectfully submitted,

**BLANK ROME LLP**

BY: *Anthony B. Haller*
                              *by NEG*
ANTHONY B. HALLER
MATTHEW J. SIEMBIEDA
NORMAN E. GREENSPAN
SCOTT E. COBURN
Attorney ID Nos. 37017, 15299, 17631 & 89841
One Logan Square
Philadelphia, PA   19103
(215) 569-5500

Attorneys for Plaintiffs,
Synthes (U.S.A.) and
Synthes Spine Company, L.P.

Dated:  January 11, 2006

23

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of January, 2006, I caused a true and correct copy of the foregoing Second Amended Complaint to be served, via hand delivery, upon the following:

> John P. McShea
> McShea Tecce P.C.
> Mellon Bank Center, 16th Floor
> 1735 Market Street
> Philadelphia, PA 19103

LEIGH ANN FIERRO

**24**

# EXHIBIT
# "A"

 **SYNTHES®**

SYNTHES U.S.A.

### EMPLOYEE INNOVATION AND NON-DISCLOSURE AGREEMENT

TO SYNTHES U.S.A.:

In consideration of my continued employment by SYNTHES and of the salary or wages paid to me and intending to be legally bound hereby, I agree:

(a) to disclose and assign to SYNTHES as its exclusive property, all inventions and technical or business innovations, including computer software developed or conceived by me solely or jointly with others on company time or on my own time during the period of my employment, (1) that are along the lines of the businesses, work or investigations of SYNTHES or its affiliates to which my employment relates, or as to which I may receive information due to my employment, or (2) that result from or are suggested by any work which I may do for SYNTHES or (3) that are otherwise made through the use of SYNTHES time, facilities or materials;

(b) to execute all necessary papers and otherwise provide proper assistance (at SYNTHES' expense), during and subsequent to my employment, to enable SYNTHES to obtain for itself or its nominees, patents, copyrights, or other legal protection for such inventions or innovations in any and all countries;

(c) to make and maintain for SYNTHES adequate and current written records of all such inventions or innovations as set forth in SYNTHES operating guidelines (PD020 Patent Applications);

(d) upon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential* nature relating to the business of the Company or its affiliates;

(e) not to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence; and

(f) not to disclose or utilize in my work with SYNTHES any secret or confidential information of others (including any prior employers), or any inventions or innovations of my own which are not included within the scope of this agreement.

This agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of SYNTHES. Discharge of my undertakings in this agreement shall be an obligation of my executors, administrators, or other legal representatives or assigns. SYNTHES, wherever used in this agreement, includes SYNTHES U.S.A., SYNTHES MAXILLOFACIAL, SYNTHES SPINE AND SYNTHES NORTH AMERICA.

I represent that, except as stated below, I have no agreements with or obligations to others in conflict with the foregoing.

| | | |
|---|---|---|
| _(Signature)_ | DAVID C. PAUL <br> _(Print Name)_ | 11/25/96 <br> _(Date)_ |

*These terms are used in the ordinary sense, without limitation. Examples of materials, information and data which may be of a secret or confidential nature are: writings, drawings, manuals, notebooks, reports, audio/video work, prototypes, models, inventions, formulas, processes, machines, compositions, computer software, microfiche, accounting methods, business plans and information systems including such materials, information and data which are in machine readable form or otherwise and any information gained through discussions and/or meetings.

# EXHIBIT
## "B"

## Early, Lilian - Brandywine Tech

| | |
|---|---|
| **From:** | Orse, Kasey - Spine |
| **Sent:** | Monday, January 13, 2003 10:02 AM |
| **To:** | Higgins, Tom - Spine; Early, Lilian - Brandywine Tech |
| **Subject:** | David Paul's Resignation Letter |

FYi

----Original Message----
| | |
|---|---|
| **From:** | David C Paul [SMTP:paulda@comcast.net] |
| **Sent:** | Monday, January 13, 2003 4:08 AM |
| **To:** | orsek@synthes.com |
| **Subject:** | resign.doc |

Kasey,
Please find my resignation letter attached - I can fax you a signed version if you need. I will also call Lilian Early to discuss what the next steps are to settle my matters with Synthes
Thanks
David

---

David C. Paul
405 Greene Lane
Phoenixville, PA 19460

January 2, 2003

Thomas Higgins
Synthes Spine
1380 Enterprise Drive
West Chester, PA 19380

Dear Tom:

It is with regret that I submit my resignation from Director of Product Development, Synthes Spine effective January 16. I have immensely enjoyed my career with Synthes that has spanned almost seven years and want to thank you and Synthes for all the opportunities that I had.

Thank you,

Sincerely

David C.Paul

Cc: Lilian Early, Human Resources

1

# EXHIBIT
## "C"

**⊗ SYNTHES**
**Spine**

SYNTHES SPINE
Post Office Box 0548
1690 Russell Road
Paoli, Pennsylvania 19301
Telephone 610-647-9700

October 2, 1998

Richard Kienzle
13112 Wexford Hollow Road
Jacksonville, FL 32224

Dear Rick:

It is with great pleasure that I confirm our verbal offer of a position with Synthes as Regional Manager in the Synthes Spine, reporting directly to Bill Cerullo. Please call me to discuss your official start date.

Your compensation package will be as follows:

- Your starting base salary will be $4,104.17 semi-monthly.
- Based on your performance, you will be recommended for participation in Synthes Management Discretionary Bonus Plan (prorated) in 1998.
- You will participate in the Semi-Annual Regional Managers Bonus (prorated for 2nd half of 1998).
- Car allowance of $566.67 per month.
- Synthes will provide appropriate office equipment including a computer, as detailed in Synthes policies and procedures.

You will be provided with a full relocation package. Details of this package will be sent to you today by overnight mail. In the meantime, you may hear from our relocation coordinator at Fox Roach, Jo Flinn. I have given her your phone number. If you would like to contact her she can be reached at 610-889-7730.

In addition, you will be provided with all employee benefits according to our policies. These benefits consist of participation in the Synthes (USA) Retirement Plan which includes a 401(k) option, Health and Dental coverage options, Long and Short Term Disability insurance, and Group Life insurance.

Within three days of your employment, you must see Lynne Rutty in the Human Resources Department to complete an I-9 Employment Eligibility Verification form and to provide evidence that you are authorized to work in the United States. Attached to this notice is an I-9 form and a list of acceptable documents to provide valid work authorization. You can present one document from List A OR one document from List B AND one document from List C. Failure to provide confirmation of employment authorization may result in Synthes' inability to employ you.

*AO/ASIF—Original Instruments of the Swiss Association for the Study of Internal Fixation*

page 2
10/2/98

All of us here at Synthes are looking forward to having you join us. If all of the aforementioned terms and conditions meet with your approval, please indicate your acceptance of the position by signing in the space provided below and return the original document directly to me.

Sincerely,

*Carol King*

Carol King
Director, Human Resources

I understand and accept this
offer of employment.

Richard Kienzle          10-6-98
                         (Dated)

Fax #  610-251-5046

# EXHIBIT
# "D"

*f. Kieszke*

 **SYNTHES**®

SALES CONSULTANT

CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

In consideration of my continued employment with Synthes Spine Company, Ltd and my assignment of a specific territory representing Synthes, the receipt and sufficiency of which consideration I hereby acknowledge, I agree as follows:

ACKNOWLEDGMENTS:

I acknowledge that: (1) Synthes Spine Company, Ltd's business (referred to as "Synthes") encompasses a broad range of technologies, products and services that Synthes now provides and may in the future develop internally or obtain through acquisitions, merger sub-contracting or otherwise; (2) Synthes is in a highly competitive industry; (3) Synthes expends substantial time and money, on an ongoing basis, to train its employees, to develop medical, bone implant and endoscopic technologies, products and services, including, but not limited to, compression plates and screws, intramedullary nails, external fixation devices, percutaneous devices, craniofacial implants, mandible implants, spinal implants and screws, and minimally invasive and endoscopic products, to develop and maintain a proprietary data base of prospects, maintain and expand its customer base, and improve and develop its technologies, products and services; (4) during my employment with Synthes, I will have access to, receive, learn, develop and/or conceive technical, customer, prospect, financial or other information that is proprietary and confidential to Synthes, (5) this information must be kept in strict confidence to protect Synthes' business and maintain its competitive position in the marketplace, and this information must be kept in strict confidence to protect Synthes' business and maintain its competitive position in the marketplace, and this information would be useful to Synthes' existing and potential competitors for indefinite periods of time; (6) Synthes would be irreparably harmed by my subsequent employment by a competitor of Synthes, regardless of the position or territory, due to the high likelihood or possibility that there would be inadvertent or other disclosures of Synthes' proprietary and confidential information; (7) I have received adequate consideration for signing this agreement and acknowledge that the terms and conditions of my employment have been materially enhanced as a result of entering this agreement; and (8) the restrictions in this agreement are reasonable and necessary to protect Synthes' legitimate business interests.

## CONFIDENTIALITY:

I understand that Synthes' proprietary and confidential information includes: (1) the identity of customers and prospects, their specific requirements, and the names, addresses and telephone numbers of individual contacts; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; product performance information, product technical information and product know-how; and (7) expansion plans, management policies and other business strategies and policies. At all times during and after my employment with Synthes, I will not disclose or communicate any of this information to any competitor or other third party, or use or refer to any of this information for any purpose, or remove materials containing any of this information from Synthes' premises, except as necessary for me to properly perform services for Synthes during my employment. Upon termination of my employment, I will immediately return to Synthes all correspondence files, business card files, customer and prospect lists, price lists, product lists, software, manuals, technical data, forecasts, budgets, notes and other materials that contain any of this information, and I will not retain any copies of those materials. I understand that these provisions apply even to information of this type that is developed or conceived by me, alone or with others, at Synthes' instruction or otherwise. I also understand that these provisions apply to all information I may receive that is confidential or proprietary to any customer or other company who does business with Synthes.

## NO SOLICITATION OF CUSTOMERS & PROSPECTS:

I will not, for a period of one year after my employment with Synthes terminates for any reason, solicit or contact, directly or through others, for the purpose of competing or interfering with any part of Synthes' business, (1) any customer of Synthes at any time during the last three years of my employment; (2) any prospect that received or requested a proposal or offer from Synthes at any time during the last three years of my employment; (3) any affiliate of any such customer or prospect, or (4) any of the individual customer or prospect contacts I established during my employment with Synthes.

NO COMPETITION IN SAME TERRITORY:

I am employed by Synthes in sales, account management or maintenance, or customer service or support, with an assigned territory, and I agree I will not, for a period of one year after my employment terminates for any reason, work for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes in the territory or territories that I am now, or have been responsible for at any time during the last year of my employment with Synthes. Competitors shall be deemed any person or entity who now, or in the future, sells, or intends to sell, orthopedic, bone fixation, maxillofacial medical, endoscopic and/or spinal implant device or instrumentation technologies, products, or services.

FORMER EMPLOYERS:

I will not disclose to Synthes or use for its benefit any information that, to my knowledge, is proprietary or confidential to any of my former employers, without proper consent. I have not signed any non-competition or other contract that prohibits me from being employed by Synthes or assigning my works and ideas to Synthes.

REMEDIES:

I acknowledge that it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes that could not be compensated by money damages. Therefore, Synthes will be entitled to enforce this agreement by obtaining a court order prohibiting me (and any other involved) from breaching this agreement. If a court decides that any provision of this agreement is not enforceable for any reason, then the rest of this agreement will not be affected. If a court decides that any provision of this agreement is not enforceable due to my state of residence or employment, then the provision will have no effect only while I am a resident of or employed in that state. If a court decides that any provision of this agreement is too broad, then the court may limit that provision and enforce it as limited.

ATTORNEYS' FEES:

I agree to indemnify Synthes for its reasonable attorneys fees and costs incurred in enforcing the terms of this agreement should I violate any of its terms.

I intend to be legally bound by this agreement, and I intend this to be a sealed instrument.

This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in

Pennsylvania.

_____

    10 - 20 - 58
Date

# EXHIBIT

## "E"

 **SYNTHES**

SYNTHES U.S.A.

## EMPLOYEE INNOVATION AND NON-DISCLOSURE AGREEMENT

TO SYNTHES U.S.A.:

In consideration of my continued employment by SYNTHES and of the salary or wages paid to me and intending to be legally bound hereby, I agree:

(a) to disclose and assign to SYNTHES as its exclusive property, all inventions and technical or business innovations, including computer software developed or conceived by me solely or jointly with others on company time or on my own time during the period of my employment, (1) that are along the lines of the businesses, work or investigations of SYNTHES or its affiliates to which my employment relates, or as to which I may receive information due to my employment, or (2) that result from or are suggested by any work which I may do for SYNTHES or (3) that are otherwise made through the use of SYNTHES time, facilities or materials;

(b) to execute all necessary papers and otherwise provide proper assistance (at SYNTHES' expense), during and subsequent to my employment, to enable SYNTHES to obtain for itself or its nominees, patents, copyrights, or other legal protection for such inventions or innovations in any and all countries;

(c) to make and maintain for SYNTHES adequate and current written records of all such inventions or innovations as set forth in SYNTHES operating guidelines (PD020 Patent Applications);

(d) upon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential* nature relating to the business of the Company or its affiliates;

(e) not to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence; and

(f) not to disclose or utilize in my work with SYNTHES any secret or confidential information of others (including any prior employers), or any inventions or innovations of my own which are not included within the scope of this agreement.

This agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of SYNTHES. Discharge of my undertakings in this agreement shall be an obligation of my executors, administrators, or other legal representatives or assigns. SYNTHES, wherever used in this agreement, includes SYNTHES U.S.A., SYNTHES MAXILLOFACIAL, SYNTHES SPINE AND SYNTHES NORTH AMERICA.

I represent that, except as stated below, I have no agreements with or obligations to others in conflict with the foregoing.

_____     Richard A. Kienzle     10-20-98
(Signature)                 (Print Name)           (Date)

*These terms are used in the ordinary sense, without limitation. Examples of materials, information and data which may be of a secret or confidential nature are: writings, drawings, manuals, notebooks, reports, audio/video work, prototypes, models, inventions, formulas, processes, machines, compositions, computer software, microfiche, accounting methods, business plans and information systems including such materials, information and data which are in machine readable form or otherwise and any information gained through discussions and/or meetings.

# EXHIBIT

## "F"

## VICE PRESIDENTS & EXECUTIVES

### CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

In consideration of [my employment] [my promotion to _____ ] [a beneficial change in the terms and conditions of my employment] with Synthes Spine Company, L.P. (hereinafter "Synthes Spine"), and other consideration as described in more detail below, the receipt and sufficiency of which consideration I hereby acknowledge, I agree as follows:

### ACKNOWLEDGMENTS:

I acknowledge that: (1) Synthes Spine and its divisions, affiliates, subsidiaries, and related companies or entities, including but not limited to Synthes (U.S.A.), Synthes Maxillofacial and Norian Corporation, are engaged in the business of developing, designing, manufacturing, and selling medical, bone implant and endoscopic technologies, products and services; (2) Synthes Spine's business encompasses a broad range of technologies, products and services that Synthes Spine now provides and may in the future develop internally or obtain through acquisitions, merger sub-contracting or otherwise; (3) Synthes Spine is in a highly competitive industry; (4) Synthes Spine expends substantial time and money, on an ongoing basis, to train its employees, to develop medical, bone implant and endoscopic technologies, products and services, including, but not limited to, compression plates and screws, intermedullary nails, external fixation devices, percutaneous devices, cranio-facial implants, mandible implants, spinal implants and screws, and minimally invasive and endoscopic products, to develop and maintain a proprietary data base of prospects, to maintain and expand its customer base, and to improve and develop its technologies, products and services; (5) at the outset of and during my employment with Synthes Spine, Synthes Spine will provide and teach me, and I will have access to, receive, learn, develop and/or conceive technical, customer, prospect, financial or other information that is proprietary and confidential to Synthes Spine; (6) this information must be kept in strict confidence to protect Synthes Spine's business and maintain its competitive position in the marketplace, and this information would be useful to Synthes Spine's existing and potential competitors for indefinite periods of time; (7) also at the outset of and during my employment with Synthes Spine, Synthes Spine will provide me, and I will have access to, and will be required to maintain, supervise, develop and initiate customer relationships that are valuable to Synthes Spine and which it has a legitimate interest in protecting; (8) Synthes Spine would be irreparably harmed by my subsequent employment by a competitor of

Synthes Spine, regardless of the position or territory, due to the possibility that there would be inadvertent or other disclosures of Synthes Spine's proprietary and confidential information or that there would be improper interference with is valuable customer relationships; (9) I have received adequate consideration for signing this agreement and acknowledge that the terms and conditions of my employment have been materially enhanced as a result of entering this agreement; and (10) the restrictions in this agreement are reasonable and necessary to protect Synthes Spine's legitimate business interests and will continue to be in effect even if my position or title changes.

CONFIDENTIALITY:

I understand that Synthes Spine's proprietary and confidential information includes: (1) the identity of customers and prospects, their specific requirements, and the names, addresses and telephone numbers of individual contacts; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; (7) product performance information, product technical information and product know-how; and (8) expansion plans, management policies and other business strategies and policies. At all times during and after my employment with Synthes Spine, I will not disclose or communicate any of this information to any competitor or other third party, or use or refer to any of this information for any purpose, or remove materials containing any of this information from Synthes Spine's premises, except as necessary for me to properly perform services for Synthes Spine during my employment. Upon termination of my employment, I will immediately return to Synthes Spine all correspondence files, business card files, customer and prospect lists, price lists, product lists, software and software information, manuals, technical data, forecasts, budgets, notes and other materials that contain any of this information, and I will not retain any copies of those materials. I understand that these provisions apply even to information of this type that is developed or conceived by me, alone or with others, at Synthes Spine's instruction or otherwise. I also understand that these provisions apply to all information I may receive that is confidential or proprietary to any customer or other company who does business with Synthes Spine.

NO SOLICITATION OF CUSTOMERS & PROSPECTS:

I will not, for a period of one year after my employment with Synthes Spine terminates for any reason, solicit or contact, directly or through others, for the purpose of competing or interfering with any part of

-2-

Synthes Spine's business, (1) any customer of Synthes Spine that I solicited at any time during the last three years of

my employment; (2) any prospective customer of Synthes Spine that received or requested a proposal or offer from

me on behalf of Synthes Spine at any time during the last three years of my employment; or (3) any customer or

prospective customer of Synthes Spine for which I had any responsibility, directly or indirectly, at any time during

the last three years of my employment.

### NO SOLICITATION OR HIRING OF EMPLOYEES:

I will not, for a period of one year after my employment with Synthes Spine terminates, directly or

indirectly solicit any employee of Synthes Spine, Synthes (U.S.A.), Synthes Maxillofacial or Norian Corporation

(collectively "Synthes") to leave his or her employment with Synthes, offer any employee of Synthes employment

elsewhere, or hire any employee of Synthes to work elsewhere.

### NO COMPETITION IN SAME TERRITORY:

I agree I will not, for a period of one year after my employment terminates for any reason, work

for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes. Competitors shall

be deemed any persons or entities who now, or in the future, sell, or intend to sell, orthopedic, bone fixation,

maxillofacial medical, endoscopic and/or spinal implant device or instrumentation technologies, products, or

services and include, but are not limited to, the following companies and any and all of their related entities or

distributorships: Stryker, Inc., Medtronics, Zimmer, Inc., Smith & Nephew, EBI, L.P., Spinevision, Inc., Blackstone

Medical, Inc., etc.

### FORMER EMPLOYERS:

I will not disclose to Synthes Spine or use for its benefit any information that, to my knowledge, is

proprietary or confidential to any of my former employers, without proper consent. I have not signed any non-

competition or other contract that prohibits me from being employed by Synthes Spine or assigning my works and

ideas to Synthes Spine.

### THIRD PARTY BENEFICIARIES:

I acknowledge that this Confidentiality, Non-Solicitation and Non-Competition Agreement is

intended to benefit Synthes Spine and any affiliates, subsidiaries, divisions or related companies or entities of

Synthes Spine, including but not limited to Synthes (U.S.A.), Synthes Maxillofacial and Norian Corporation. I

further acknowledge that the intended beneficiaries of this Confidentiality, Non-Solicitation and Non-Competition

-3-

Agreement are entitled to enforce the provisions of this agreement by seeking injunctive relief or any other appropriate remedy.

**REMEDIES:**

I acknowledge that it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes Spine that could not be compensated by money damages. Therefore, Synthes Spine will be entitled to enforce this agreement by obtaining a court order prohibiting me from breaching this agreement. If I am found to have violated this agreement, the period of enforcement will run from the date the court enters a final judgment or order enforcing the agreement. If a court decides that any provision of this agreement is not enforceable for any reason, then the rest of this agreement will not be affected. If a court decides that any provision of this agreement is not enforceable due to my state of residence or employment, then the provision will have no effect only while I am a resident of or employed in that state. If a court decides that any provision of this agreement is too broad, then the court may limit that provision and enforce it as limited.

**ATTORNEYS' FEES:**

I agree to indemnify Synthes Spine for its reasonable attorney's fees and costs incurred in enforcing the terms of this agreement should I violate any of its terms. I intend to be legally bound by this agreement, and I intend this to be a sealed instrument. This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania.

Date:_____        _____
                                       Employee Signature
                                       Printed Name:_____

Date:_____        _____
                                       Synthes Spine Company, L.P.

-4-