UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SYNTHES (U.S.A.), et al., | : | |
| Plaintiffs, | : | 1:06-MC-161 |
| | : | |
| v. | : | RMC/ |
| | : | |
| GLOBUS MEDICAL, INC., et al., | : | (original matter pending in the |
| Defendants. | : | U.S.D.C. for the E.D. Pa. |
| | : | CA No. 2:04-cv-1235 LFS) |

### [PROPOSED] O R D E R

AND now, this _____ day of _____, 2006, upon consideration of the Cross-Motion to Compel filed by Synthes (U.S.A.) and Synthes Spine Co., LLP (together, "Synthes"), and Castellano Malm Ferrario & Buck PLLC's response in opposition thereto, and for good cause shown, it is hereby

### O R D E R E D

that Synthes' Cross-Motion is **DENIED**. It is further

### O R D E R E D

that Castellano Malm Ferrario & Buck PLLC's Motion to Quash Synthes' March 24, 2006 Subpoena *Duces Tecum* is **GRANTED**.

BY THE COURT:

_____
HON. ROSEMARY M. COLLYER
U.S. District Court Judge

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYNTHES (U.S.A.), et al., | : |
|     Plaintiffs, | :    1:06-MC-161 |
| | : |
| v. | :    RMC/ |
| | : |
| GLOBUS MEDICAL, INC., et al., | :    (original matter pending in the |
|     Defendants. | :    U.S.D.C. for the E.D. Pa. |
| | :    CA No. 2:04-cv-1235 LFS) |

**NON-PARTY CASTELLANO MALM FERRARIO & BUCK PLLC'S
MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO SYNTHES' CROSS-MOTION TO COMPEL**

**I.   INTRODUCTION**

On March 24, 2006, Synthes (U.S.A.) and Synthes Spine Co., LLP (together, "Synthes"), plaintiffs in an action pending in the United States District Court for the Eastern District of Pennsylvania ("Pennsylvania Action"),[1] served non-party, Castellano Malm Ferrario & Buck PLLC ("CMFB"), with a subpoena *duces tecum* ("Subpoena"). The Subpoena demands production of a wide range of privileged and confidential information, publicly available information, and duplicative information.

CMFB filed timely objections to the Subpoena on April 5, 2006. CMFB subsequently conferred with counsel for Synthes on numerous occasions in an attempt to reach an agreement concerning production of documents. Unable to reach an agreement, CMFB filed a Motion to

---

[1]   Synthes asserts claims against Globus Medical, Inc., David C. Paul ("Mr. Paul"), and Richard A. Kienzle (collectively, "Globus") in the Pennsylvania Action for unfair competition, misappropriation of trade secrets, civil conspiracy, breaches of contract and fiduciary duty, and aiding and abetting breach of fiduciary duty. Globus asserts counterclaims against Synthes in the Pennsylvania Action for defamation, trade libel, tortious interference with prospective contractual relationships, and Pennsylvania unfair competition.

1

Quash the Subpoena on April 24, 2006.[2] In response to CMFB's Motion to Quash, Synthes filed the instant Cross-Motion to Compel on May 15, 2006.

Local Civil Rule 7(a) provides that a motion "shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts." Instead of following this rule, Synthes' Cross-Motion inappropriately interjects a lengthy version of Synthes' speculative theories, purportedly supporting its claims against Globus in the Pennsylvania Action, and Synthes' version of the resolution of certain discovery motions filed by the parties in the Pennsylvania Action. CMFB, Globus' current patent counsel, is not a party to the Pennsylvania Action. Synthes should not be permitted to litigate discovery issues with Globus in this forum under the guise of seeking information it purportedly tried but could not obtain in the underlying action.

The arguments raised in Synthes' Cross-Motion are also fundamentally flawed as Synthes mischaracterizes CMFB's "undue burden" objections, misapprehends the nature of CMFB's requests for information concerning Synthes' misappropriation of trade secrets claim, and misconstrues the nature and scope of the work that attorney Brian J. Malm ("Mr. Malm") performed for Synthes.

As revealed by the broad range of documents requested by Synthes, the Subpoena appears to be an improper "back-door" attempt to obtain information relating to Globus' current ideas, designs, inventions, inventions in progress, and potential inventions. Mr. Paul (Globus' founder and chief product designer) resigned from Synthes over three years ago, on January 2, 2003. Asking CMFB to produce documents pursuant to the Subpoena, created up to as late as March

---

[2] CMFB incorporates by reference herein its Motion to Quash and Supporting Statement of Specific Points of Law and Authority.

2

23, 2006, reflects that Synthes' true motive in serving the Subpoena upon CMFB is to obtain an improper look into Globus' day-to-day activities and recent research and development efforts. Despite Synthes' hollow protestations to the contrary, production of such information is not likely to lead to the discovery of information relevant to the Pennsylvania Action, but will certainly provide Synthes—a direct competitor of Globus—with a devastating and undue commercial advantage over Globus. It is in this context that CMFB argued for a temporal limit on the production of the subpoenaed documents from CMFB.

While Synthes has narrowed the scope of the Subpoena in various respects after CMFB filed its Motion to Quash the Subpoena (exposing the truly overbroad nature of the Subpoena in its original form), CMFB has legitimate undue burden, lack of relevance, and privilege objections to the remaining documents in dispute.

## II.  CONCISE STATEMENT OF FACTS

CMFB incorporates by reference herein the "Concise Statement of Facts" section of its Motion to Quash. Since the filing of the Motion to Quash, the following significant events have occurred:

- Globus has produced its pending unpublished patent application files to Synthes in the Pennsylvania Action (*see* June 5, 2006 letter from McShea Tecce, counsel for Globus in the Pennsylvania Action, to counsel for Synthes, attached hereto as Exhibit A);[3]

- Counsel for Synthes has narrowed the scope of the Subpoena (*see* Synthes' Memo. at 18-19); and

- CMFB hereby agrees to provide a privilege log for any opinions in its possession provided to Globus before March 24, 2006, by Mr. Malm or John P. Mulgrew

---

[3] Since Globus has produced its unpublished pending patent application files to Synthes in the Pennsylvania Action, there is no need for CMFB to make a duplicative production.

3

("Mr. Mulgrew")[4] concerning Synthes intellectual property.

Accordingly, the only remaining areas of dispute between CMFB and Synthes concerning the production of documents pursuant to the Subpoena are as follows:

- Whether CMFB must produce patent literature and non-patent literature that has not been referred to or listed in a published or produced Globus patent application or listed in an Information Disclosure Statement ("IDS") to the United States Patent and Trademark Office ("Patent Office") in CMFB's possession. (*See* Item (7) set forth in the April 20, 2006 e-mail from counsel for Synthes to CMFB attached as part of Exhibit C to Synthes' Cross-Motion);

- Whether CMFB must produce non-Globus third-party prosecution history files *i.e.*, communications between applicants and the Patent Office concerning non-Globus patents, in its possession as of March 23, 2006 (subject to the exclusions for prosecution histories Synthes set forth in Item (8) of the April 20, 2006 e-mail from counsel for Synthes to CMFB attached as part of Exhibit C to Synthes' Cross-Motion );

- Aside from the privilege log CMFB has agreed to provide Synthes with respect to any opinions in its possession provided to Globus before March 24, 2006, by Mr. Malm and Mr. Mulgrew concerning Synthes intellectual property, whether CMFB must provide a privilege log for any other attorney-client privileged communications in its possession as of March 23, 2006, involving Globus and Mr. Malm and Mr. Mulgrew; and

- If the remaining disputed portions of the Subpoena are not quashed as CMFB requests: (1) whether the current temporal limits of the Subpoena are too broad; and (2) whether Synthes must provide CMFB with information concerning the technical subject matters relevant to Synthes' claims in the Pennsylvania Action to reduce the burden of production on CMFB.

---

[4] Mr. Mulgrew, is not, and has never been, associated in any capacity with CMFB. Mr. Mulgrew transferred his active files to CMFB in or around March of 2005 when CMFB began representing Globus. Mr. Mulgrew has had no involvement with Globus or CMFB prosecution since that time. *See* Declaration of Mr. Malm ("Malm Decl.") ¶¶ 16-17. The Malm Decl. is attached hereto as Exhibit B.

4

## III. ARGUMENT

### A. Synthes' Cross-Motion Arguments Are Fundamentally Flawed

The arguments raised in Synthes' Cross-Motion are fundamentally flawed for several reasons discussed *seriatim*.

#### 1. Synthes Mischaracterizes CMFB's "Undue Burden" Objections

The majority of Synthes' Cross-Motion argues that Globus' so-called "15-20" unpublished pending patent application documents should be "quite quick and easy" for CMFB to produce. Synthes' Memo. at 14; *see also id.* at 8-15, 17. CMFB's "undue burden" objections, however, centered upon Synthes' request for production of CMFB's privileged communications with Globus and the undue burden occasioned by the creation of a privilege log for such non-discoverable documents.

CMFB's objections regarding the production of unpublished pending patent application documents were not related to the difficulty of their physical production, but to their relevance and the necessity of defining an appropriate universe of responsiveness on the part of CMFB by subject matter, temporal scope, and privileged information. *See* May 6, 2006 e-mail from CMFB to counsel for Synthes attached as part of Exhibit C to Synthes' Cross-Motion. (Due to the extremely broad nature of Synthes' document requests, the need to establish parameters formed the gravamen of CMFB's objections to all of Synthes' documents requests. *See id.*)

In any event, Synthes' concerns with respect to Globus' unpublished pending patent application documents are moot. Globus has produced its pending unpublished patent application files to Synthes in the Pennsylvania Action. *See* Exhibit A, 06/05/06 letter.[5]

---

[5] These files include CMFB correspondence to or from the Patent Office, the

Nevertheless, Synthes' argument in its Cross-Motion that it subpoenaed Globus' patent counsel upon a suspicion that Globus made an incomplete document production in the Pennsylvania Action is disingenuous. Globus previously produced patent applications and documents to Synthes for <u>all</u> Globus products in production at the time of the document request. Thus, Synthes' conclusion that its "suspicion" was confirmed because CMFB "admitted that it possesses 15 to 20 of Globus' unpublished patent applications" (Synthes' Memo. at 1; *see also id.* at 5-6, 23) is entirely misleading.[6]

All of Globus' pending unpublished patent applications, with two minor exceptions (*see* Exhibit A, 06/05/06 letter), were filed <u>after</u> the Court in the Pennsylvania Action entered a November 4, 2005 Order (amending its prior September 30, 2005 Order that granted in part and denied in part Synthes' Motion to Compel Responses by Globus to certain discovery requests[7]), and <u>after</u> the date of Globus' responses to these document requests. Moreover, CMFB understands that many of these pending unpublished patent applications are duplicates of patent applications previously produced to Synthes or earlier versions of published patent applications. Synthes' implication that Globus somehow has failed to comply with its discovery obligations in

---

corresponding prosecution histories, and non-privileged communications between CMFB and Globus (*i.e.*, authorization to file, reporting of the filing, etc.).

[6] Synthes' allegation that Globus and CMFB have attempted not to disclose some "smoking gun patent documents" (*see* Synthes' Memo. at 23) *vis-a-vis* Globus' unpublished patent applications is absurd. Unpublished patent documents become publicly available at most within eighteen months after filing. *See* 18 U.S.C. § 122. All of the information in these patents will become public. The fact that many of Globus' unpublished patent applications are "follow on" applications means they will likely publish within a few months. Hence, Synthes is merely seeking advanced notice of this patent information.

[7] The September 30, 2005 Order is attached as Exhibit K to Synthes' Cross Motion. The November 4, 2005 Order is attached hereto as Exhibit C.

6

the Pennsylvania Action, is not only inappropriately raised before this Court, but is wholly unfounded. CMFB understands that Globus produced to Synthes in the Pennsylvania Action <u>all</u> of its Pro-Engineering CAD files that reflect <u>every</u> <u>product</u> being sold or developed by Globus to date,[8] along with 30,388 bates-stamped paper documents, 900 additional pages of telephone records, and over 20,360 Invoice Files that include invoices, purchase orders, and work orders. Globus also produced approximately 8,480 documents to Synthes in other actions. *See* December 8, 2005 letter from McShea Tecce to counsel for Synthes attached as Exhibit M to Synthes' Cross-Motion. Additionally, Globus produced a corporate representative for deposition on at least four occasions. *See id.* CMFB is further advised that Globus' recent June 5, 2006 production of unpublished patent application files amounts to an additional 4,537 bates-stamped documents produced to Synthes in the Pennsylvania Action.

2.  **Synthes Misapprehends the Nature of CMFB's Request for Information Concerning Synthes' Misappropriation of Trade Secrets Claim**

CMFB has never asked Synthes to provide it with a list of Synthes' alleged trade secrets, and does not seek information violative of the Confidentiality Agreement in the Pennsylvania Action. *See* Synthes' Memo. at 15-17 and April 20, 2006 e-mail from counsel for Synthes to CMFB attached as part of Exhibit C to Synthes' Cross Motion. Rather, CMFB asked Synthes to limit responsive documents to technical subject matters for which Synthes had a product in active development while Mr. Paul was employed at Synthes, thereby allowing CMFB to limit its production to documents relevant to Synthes' trade secret claims. *See* May 6, 2006 e-mail from CMFB to counsel for Synthes attached as part of Exhibit C to Synthes' Cross-Motion. CMFB

---

[8]   Globus produced these Pro-Engineering files to Synthes on computer disks.

informed counsel for Synthes that CMFB segregates its documents predominantly by technology—therefore, it would significantly lessen the potential document production burden on its part if Synthes would provide CMFB with the technical subject matters at issue.[9]

### 3. Synthes Misconstrues the Nature and Scope of Mr. Malm's Work for Synthes

Synthes misconstrues the nature and scope of the work Mr. Malm (currently a partner at CMFB) performed for Synthes, and erroneously states that he "worked personally" with Mr. Paul in the course of his representation of Synthes while employed with the law firm of Pennie & Edmonds LLP ("Pennie"). *See* Synthes' Memo. at 11; *see also id.* at 2-3, 10, 12-13, 19.

While Mr. Malm was an associate at Pennie, Pennie represented Synthes (U.S.A.) ("Synthes") in patent matters before the Patent Office. *See* Exhibit B, Malm. Decl. ¶ 7. Synthes

---

[9] Under the applicable Pennsylvania law, the sale of a product containing trade secrets constitutes a public disclosure which can defeat a claim founded upon those trade secrets. *See, e.g., Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 570 (3d Cir. 2003) (affirming judgment in defendant's favor on plaintiff's misappropriation of trade secret claim, court held there is no trade secret if at the time of disclosure or use by alleged misappropriator, the allegedly secret information could have been ascertained by inspection of sold articles or by reverse engineering); *G. Neil Corp. v. Cameron*, No. 03-CV-4419, 2003 WL 22533698, *1 (E.D. Pa. Oct. 21, 2003) (denying plaintiff's motion for preliminary injunction on, *inter alia*, misappropriation of trade secrets claim, court held plaintiffs could not claim its publicly sold products contained trade secrets); *Morelli v. Leach & Garner Co.*, No. 85-CV-6234, 1986 WL 3576, *1 (E.D. Pa. Mar. 20, 1986) ("If the nature of the trade secret is ascertainable by inspection of a product which has been sold at public then the trade secret claim is defeated."); *International Election Sys. Corp. v. Shoup*, 452 F. Supp. 684, 705 (E.D. Pa. 1978) ("Where the item or information claimed to be a trade secret is sold to the public, it loses its status as a trade secret."), *aff'd*, 595 F.2d 1212 (3d Cir. 1979).

Therefore, CMFB has appropriately requested that Synthes identify, by technical subject matter, the technology it was actively developing, but not marketing or selling, up until the time Mr. Paul resigned from Synthes on January 2, 2003, that relates to the allegations of trade secret misappropriation, and which, as Synthes' argues in its Cross-Motion, also forms the basis of Synthes' breach of a confidentiality agreement claim against Mr. Paul. *See* Synthes' Memo. at 17 (Synthes claims that Globus wrongfully obtained and used (and Mr. Paul disclosed) Synthes' confidential information).

had divisions relating to different technology areas, such as Trauma, Maxillofacial, and Spine. *See* Exhibit B, Malm Decl. ¶ 8. As Synthes acknowledges, Mr. Paul's responsibilities were limited to the Spine division. *See* Synthes' Memo. at 2 (Mr. Paul was Synthes' Director of Spine Product Development).

As Synthes is also undoubtedly aware, Mr. Malm did minimal work for Synthes' Spine division. *Id.* ¶¶ 8-9. Throughout Mr. Malm's work at Pennie, his representation of Synthes primarily involved the fields of Trauma and Maxillofacial technologies. *Id.* ¶ 8. Indeed, Mr. Malm did <u>not</u> work personally with Mr. Paul prior to representing Globus. Malm Decl. ¶¶ 14-15. Mr. Malm did not prepare any original patent application involving Mr. Paul as an inventor on behalf of Synthes. *Id.* ¶ 12. Mr. Malm did not even speak with Mr. Paul prior to 2004. *Id.* ¶ 15.

Mr. Malm did file a divisional patent application in 2002 (attached as Exhibit O to Synthes' Cross-Motion) in connection with an appeal of the parent patent application before the Patent Office on Synthes' behalf. *Id.* ¶ 10. Mr. Malm's involvement with respect to this divisional application was limited to filing a response and appeal in the parent application. *Id.* Mr. Malm did not draft the patent application attached as Synthes' Exhibit O, or its parent application which claims priority back to 1999. *Id.* ¶¶ 10, 12. As such, Mr. Malm's involvement with the cited Synthes application, and its parent application, was limited to the record that was already before the Patent Office and nothing more. Mr. Malm did not work with Mr. Paul on this divisional application or the appeal of the parent application. *Id.* ¶ 11. The complete lack of interaction between Mr. Malm and Mr. Paul with this Synthes application—and <u>any other</u> Synthes application—hardly establishes that Mr. Malm "worked personally" with Mr. Paul while

9

preparing applications for Synthes, as Synthes wrongly asserts. *See id.* ¶¶ 8-15.[10] Further, Mr. Malm's filing of a divisional application for Synthes several years ago, does not now, render Globus' privileged communications regarding its intellectual property matters relevant to Synthes' claims in the Pennsylvania Action as Synthes mistakenly argues.

      **B.**    **CMFB's Objections to Production of the Patent Literature and Non-Patent Literature At Issue Should Be Sustained**

CMFB objects on grounds of undue burden and lack of relevance to the production of patent literature and non-patent literature (*e.g.*, brochures, marketing literature, cached web pages, product brochures, and scientific articles or references) that is not referred to or listed in a published or produced Globus patent application or listed in an IDS. CMFB maintains patent literature and non-patent literature in paper and electronic form. With respect to patent literature alone, CMFB estimates it possesses information relating to approximately 1,000 patents and patent publications.

As discussed in CMFB's Motion to Quash, Synthes' "concession" that CMFB would not have to produce literature cited in an IDS to the Patent Office, while reducing the volume of copies to be produced, actually increases CMFB's burden. In order to comply with Synthes' requests, CMFB would have to cross-reference every paper and electronic copy of a patent in its possession with every IDS in a Globus Application to make determinations about whether a patent was listed or not. Such a task would obligate CMFB to review and cross-reference thousands of documents, and require countless hours on the part of CMFB attorneys to complete.

---

[10] In fact, Synthes' current outside counsel continues to file divisional applications resulting from the same parent application. *See* Continuation Application, filed June 8, 2005, attached hereto as Exhibit D. Synthes is "hard-pressed" to claim that all of its current attorneys, prosecuting applications which list Mr. Paul as an inventor, are still "working personally" with Mr. Paul.

To the extent that Synthes may argue that CMFB should simply "over-produce" these documents by producing all of them, Synthes fails to identify their relevance. *See* CMFB's Statement of Points and Authorities in Support of Motion to Quash at 4-7 for a discussion of the appropriate legal standards in support of CMFB's objections and Synthes' Memo. at 1-23 (absence of relevance for these documents). The patent files in CMFB possession will provide Synthes with an undue "peek" into the day-to-day activities of Globus. For example, third party patents and patent applications in CMFB's possession may inform Synthes as to Globus' ongoing due diligence projects, freedom to operate analysis, prior art searches and search strategies, design around projects, or potential intellectual property acquisitions. It is the identification of these items (and not necessarily the specific patents or applications themselves) that is of competitive use to Synthes. Synthes' failure to articulate the relevance of these documents to its claims in the Pennsylvania Action only underscores the improper motive attendant to Synthes' requests.

Alternatively, if CMFB is compelled to produce this patent literature and non-patent literature, then it requests a narrowing of the temporal limits of the Subpoena and information concerning the technical subject matters relevant to Synthes' claims in the Pennsylvania Action.

### C. CMFB's Objection to Production of Non-Globus Third Party Prosecution History Files Should Be Sustained

It is unclear whether the Subpoena requests production of CMFB's non-Globus third-party prosecution history files (communications between applicants and the Patent Office concerning non-Globus patents). To the extent the Subpoena requests such information (subject to the exclusions for prosecution histories Synthes set forth in Item (8) of the April 20, 2006 e-mail from counsel for Synthes to CMFB attached as part of Exhibit C to Synthes' Cross-Motion), CMFB objects to production of these files on undue burden and relevance grounds. It would significantly lessen any document production burden on the part of CMFB if Synthes would advise CMFB about the technical subject matters at issue in the underlying action since CMFB's files are organized by technology. Nonetheless, Synthes fails to establish the relevance of this type of third-party information. *See* CMFB's Motion to Quash at 4-7 for a discussion of the appropriate legal standards in support of CMFB's objections and Synthes' Memo. at 1-23 (absence of relevance for these documents).

CMFB's third-party prosecution history files will also provide Synthes with an unjustified look into the day-to-day activities of Globus. These files may inform Synthes as to Globus' claim construction and validity analysis for certain patents, as well as Globus' aforementioned ongoing due diligence projects, freedom to operate analysis, prior art searches and search strategies, design around projects, or potential intellectual property acquisitions. Therefore, the identification of these third-party files is of competitive use to Synthes. As with the patent literature and non-patent literature, Synthes' failure to articulate the relevance of third-party prosecution history files to its claims in the Pennsylvania Action further underscores the

improper motive attendant to Synthes' requests.

Alternatively, if CMFB is compelled to produce such third-party prosecution histories, then it requests a narrowing of the temporal limits of the Subpoena and information concerning the technical subject matters relevant to Synthes' claims in the Pennsylvania Action.

### D. CMFB's Objections to Production of a Privilege Log for Certain Attorney Communications Should Be Sustained

Synthes argues that it needs a privilege log identifying Globus's privilege communications with its outside counsel, Mr. Malm and Mr. Mulgrew, merely because they previously worked on Synthes matters. *See* Synthes' Memo. at 20-22. This argument lacks any merit—it is an improper "back-door" attempt at competitive intelligence that is unrelated to Synthes' claims in the Pennsylvania Action.

Aside from the privilege log CMFB has agreed to provide to Synthes with respect to any opinions in its possession provided to Globus before March 24, 2006, by Mr. Malm and Mr. Mulgrew concerning Synthes intellectual property, CMFB objects to creating a privilege log for any other attorney-client privileged communications in its possession as of March 23, 2006, involving Globus and Mr. Malm and Mr. Mulgrew. As discussed in detail in CMFB's Motion to Quash, CMFB's review of potentially responsive information for these communications would take many hours. Creating a corresponding log also would involve an inordinate amount of time on the part of CMFB attorneys due to the number of documents identified. *See* CMFB's Statement of Points and Authorities in Support of Motion to Quash at 11-12. It is simply <u>unnecessary</u> for CMFB to be subjected to this burden.

With the sole exception of Mr. Malm's notes taken during his meetings with Globus,

Synthes is able to review Globus' documents and privilege log to ascertain any relevant information concerning the requested attorney-client communications. Indeed, Synthes acknowledges in its Cross-Motion that "the burden is in reality upon Globus, <u>not its patent attorneys</u>." Synthes' Memo. at 22 (emphasis added). Synthes, therefore, should not be permitted to unduly burden CMFB with a baseless demand for a cumulative privilege log from CMFB. *See* CMFB's Statement of Points and Authorities in Support of Motion to Quash at 4 (citing FED. R. CIV. P. 26(b)(2)—courts may limit cumulative or duplicative discovery and discovery obtainable from a more convenient and less burdensome source).[11]

CMFB likewise should not be required to create a privilege log for Mr. Malm's non-discoverable meeting notes. Not only is this request unduly burdensome, especially in light of the fact that Synthes refuses to provide CMFB with information regarding the technical subject

---

[11] Synthes' argument that a perceived similarity between its published patent application (Exhibit O to Synthes' Cross-Motion) and Globus patents prosecuted by CMFB somehow creates a need for a CMFB privilege log for these documents to assess the potential application of the "crime fraud exception" to their privileged status (Synthes' Memo. at 21-22) is specious. It is axiomatic that no trade secret exists in a published patent application. *See Mateson Chemical Corp. v. Vernon*, No. 96-CV-7914, 2000 WL 680020, *8 n.12 (E.D. Pa. May 9, 2000) ("The very act of publishing a trade secret in a patent destroys the secretive nature of that which is disclosed therein.") (quoting *Midland-Ross v. Sunbeam Equip. Corp.*, 316 F. Supp. 171, 177 (W.D. Pa.), *aff'd*, 435 F.2d 159 (3d Cir. 1970)); *accord Medtronic Vascular, Inc. v. Advanced Cardiovascular Syst., Inc.*, No. 98-CV-80, 2005 WL 388592, *1 n.4 (D. Del. Feb. 2, 2005) ("when a patent is published containing a trade secret, it destroys the trade secret"); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 cmt. f (1995) ("[I]nformation that is disclosed in a patent or contained in published materials reasonably accessible to competitors does not qualify for protection under this Section.") Thus, neither Mr. Malm's nor Mr. Mulgrew's prior involvement with Synthes' published patent applications is relevant to Synthes' misappropriation of trade secret based claims in the Pennsylvania Action.

In any event, any alleged "need" by Synthes to review a privilege log for the documents at issue can be obviated by a review of Globus' privilege log in the Pennsylvania Action. Synthes offers no explanation as to why it should be permitted to receive duplicative privilege logs. As Synthes itself has stated, the burden in this matter should not be placed upon Globus' patent counsel. *See* Synthes' Memo. at 22.

matters at issue, but the essentially unbounded time-frame of the Subpoena is unwarranted.

Mr. Paul resigned from Synthes over three years ago. Asking CMFB to produce attorney-client documents created up to as late as March 23, 2006—more than three years after Mr. Paul resigned from Synthes—reflects that Synthes' true motive in serving a subpoena upon CMFB is to obtain a "snap-shot" of day-to-day activities and recent research and development efforts of its direct competitor. Such an improper motive is reflected in Synthes' demand for a privilege log concerning Mr. Malm's attorney-client communications with Globus that provides "sufficient detail about any ideas, inventions, or innovations mentioned in the allegedly privileged documents . . . ." See Synthes' Memo. at 22. Not only is this demand contrary to the Federal Rules of Civil Procedure, which reference only a "description of the nature of the documents, communications, or things not produced" for privilege logs (see FED. R. CIV. P. 45 (d)(2)), but if CMFB provides Synthes with a privilege log for these non-discoverable "inventor's notes" Synthes will unfairly gain access to information concerning how often, when, and why Globus has met with its patent counsel.

Accordingly, CMFB should not be compelled to provide Synthes with a privilege log beyond the privilege log it has agreed to provide for the opinions of Mr. Malm and Mr. Mulgrew concerning Synthes intellectual property. Alternatively, if CMFB is compelled to produce an additional privilege log, then it requests a narrowing of the temporal limits of the Subpoena and information concerning the technical subject matters relevant to Synthes' claims in the Pennsylvania Action.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in CMFB's Motion to Quash the Subpoena

and Supporting Statement of Specific Points of Law and Authority, CMFB's Motion to Quash should be granted and Synthes' Cross-Motion to Compel should be denied.

Alternatively, should CMFB be required to produce any documents responsive to the Subpoena, or to provide any privilege log beyond that which CMFB has agreed to create, CMFB's requests for a narrowing of the temporal limits of the Subpoena and information concerning the technical subject matters relevant to Synthes' claims in the Pennsylvania Action should be granted. CMFB also requests that the Court order Synthes to pay the costs and fees associated with CMFB's production.

Dated: June 6, 2006                                  Respectfully submitted,

By: _____
Matias Ferrario, Esq. (D.C. Bar No. 472883)
Kristina Castellano, Esq. (D.C. Bar No. 465664)
**Castellano Malm Ferrario & Buck PLLC**
2121 K Street, N. W., Suite 800
Washington, D.C. 20037
Phone: 202-478-530

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Non-Party Castellano Malm Ferrario & Buck PLLC's Memorandum of Points and Authorities in Opposition to Synthes' Cross-Motion to Compel was served by U.S. Mail on June 6, 2006 to:

Robert W. Ashbrook Jr.
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

COUNSEL FOR SYNTHES (U.S.A.) AND SYNTHES
SPINE COMPANY, L.P.

John P. McShea
MCSHEA \ TECCEE PC
1717 Arch Street
Philadelphia, PA 19103

COUNSEL FOR GLOBUS MEDICAL, INC., RICHARD A.
KIENZLE, AND DAVID C. PAUL

_____
Matias Ferrario, Esq